495 F.Supp. 367 (1979)
Michael F. SVOBODA, Plaintiff,
v.
The TRANE COMPANY, Defendant.
No. 79-122-C(3).
United States District Court, E. D. Missouri, E. D.
November 16, 1979.
On Motions to Set Aside Order and Leave to File Amended Complaint January 21, 1980.
*368 John S. Sandberg, St. Louis, Mo., James D. Edgar, Webster Groves, Mo., for plaintiff.
Robert M. Lucy, Thomas C. Walsh, Terrence J. O'Toole, St. Louis, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court on the defendant's motion for partial summary judgment. The plaintiff's complaint alleges that defendant has failed to pay plaintiff certain commissions which defendant owes him as a result of work performed under an oral employment contract, entered into in March, 1972. Under the contract, which plaintiff alleges was negotiated on defendant's behalf by its alleged agent, Tri-City Trane Air Conditioning Company (hereinafter Tri-City), doing business in Sullivan County, Tennessee, plaintiff was to sell residential and commercial heating and air conditioning equipment. Plaintiff seeks $10,100 in unpaid commissions, with interest thereon, for sales projects which were completed in 1974.
Defendant's motion for summary judgment seeks to limit the amount at issue to $1,700. The basis of defendant's motion involves a brief history of the relationship between plaintiff and Tri-City. Plaintiff left the employ of Tri-City in December, 1973, and moved to Virginia. In December, 1974, plaintiff brought suit against Tri-City in Tennessee state court, alleging an oral employment contract with Tri-City, entered into on or about March 1, 1972, under which Tri-City was to pay plaintiff certain commissions on his sales of heating and air-conditioning products. Plaintiff's complaint enumerated ten projects on which his sales work had been completed as of December, 1973, when he left Tri-City's employ, and for which commissions were allegedly due. Plaintiff sought $13,245 in unpaid commissions and wages.
Tri-City's answer (which was apparently never filed) admitted that it had an oral employment contract with plaintiff, dating from around March, 1972, and agreed basically with the rates of commission alleged. However, it contended that a final accounting on certain of the projects was not possible because Tri-City had not yet completed its work, and that plaintiff had been overpaid for two other projects. As to the remaining projects Tri-City claimed that plaintiff was not entitled to the full commission because he had not completed his duties before leaving Tri-City.
At this juncture an accounting firm was retained to try to resolve the dispute over the amount of commissions due. Plaintiff's deposition, at 141, 148. The accounting firm, after an examination of Tri-City's books and the projects in question, arrived at a figure with which plaintiff disagreed. Plaintiff's deposition, at 149. The lawsuit thereafter languished, and is still pending on the court records, no order of dismissal or final judgment having been entered.
In early 1977, Tri-City filed a petition for arrangement under Chapter XI of the Bankruptcy Act[*] in the United States District Court for the Eastern District of Tennessee. Plaintiff's attorney submitted a proof of claim in that proceeding on May *369 17, 1977, in the amount of $13,245, for "unpaid wages and commissions owed the claimant as an employee of the bankrupt." Tri-City filed an objection on June 15, 1977, to plaintiff's claim, admitting that it owed the plaintiff $1,700 only, as ascertained by the auditing firm. The District Court, by order dated August 29, 1977, allowed the plaintiff's claim in the amount of $1,700 on the basis that "an audit of the debtor's records shows that the debtor owes only $1,700.00 to the creditor." The Order recited that a hearing on the claim had been scheduled for July 11, 1977; that notice of the hearing and Tri-City's objections had been given to the plaintiff's attorney; that the debtor had appeared for the hearing; and that plaintiff's attorney had informed the debtor's attorney that he would not appear and resist the objection.
Defendant in the instant action, while resolutely denying that it had any agency relationship with Tri-City, has moved for partial summary judgment on the basis that the partial disallowance of plaintiff's claim in the Chapter XI proceeding is res judicata or that the disallowance operates as a collateral estoppel to plaintiff's effort to recover more than $1,700 in this action. Defendant has filed duly certified copies of the proof of claim, the objection, and the Court's Order. Plaintiff, in reply, has argued that the doctrine of res judicata does not apply and that he may not be estopped from litigating the issue anew in this lawsuit because he did not have a full and fair opportunity to be heard on the merits of his claim in the bankruptcy proceeding. Plaintiff was apparently living in St. Louis, Missouri, at the time the Chapter XI proceeding was initiated. He argues that he lacked the ability and incentive to conduct the litigation in the bankruptcy court.
We agree with plaintiff that the doctrine of res judicata is not applicable to this case. One of the essential requisites for the applicability of the doctrine is that the parties to the second action be the same as, or in privity with, the parties to the first action. Walter E. Heller & Co. v. Cox, 343 F.Supp. 519, 524 (S.D.N.Y.1972), aff'd 486 F.2d 1398 (2d Cir.), cert. denied 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 61 (1973). Defendant argues that its alleged principal-agent relationship with Tri-City satisfies the requirement of privity. We cannot agree. Tri-City and the defendant did not, under the actual or apparent agency theory of plaintiff's complaint, have a concurrent or successive relationship to the same right of property nor did they represent the interests of the same person. Such are the traditional parameters of privity. See 1B Moore's Federal Practice, ¶ 0.411[1].
"The general rule is that no privity arises from concurrent relationship to the same duty or liability."
Id. at ¶ 0.411[2].
Although the relationship of principal-agent is usually considered sufficient to permit a defense based on a prior judgment exonerating the other member of the agency relationship, id., such a defensive use is allowed because the plaintiff is presumed to have had the "full and fair opportunity" to litigate the issue in the first suit. In such circumstances, there is no need to deny the benefits of a prior judgment to one who would not have been bound by it. James Talcott, Inc. v. Allahabad Bank, Ltd., 444 F.2d 451 (5th Cir.) cert. denied 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971).
Having made the determination that the plaintiff's prior opportunity to litigate the issue is key, we have entered the realm of collateral estoppel. The requirements for the application of the doctrine of collateral estoppel have been defined in the Eighth Circuit as the following:
(1) there must be an identity of issues;
(2) there must have been a final judgment on the merits;
(3) the estopped party must have been a party to the prior action, or in privity with a party; and
(4) the estopped party must have had the full and fair opportunity to be heard in the prior action.
Oldham v. Pritchett, 599 F.2d 274, 279 (8th Cir. 1979).
*370 The plaintiff does not seriously dispute the presence in the instant case of the first three of these factors. Plaintiff was obviously a party to the Chapter XI proceedings. As to the identity of issues, plaintiff's answers to defendant's interrogatories show that he is claiming commissions for the same ten projects which were listed in plaintiff's complaint in Tennessee state court, and which obviously formed the basis for the proof of claim since plaintiff sought $13,245 for wages and commissions in both proceedings in Tennessee.
As to the existence of a final judgment on the merits of plaintiff's claim, the law is settled that the allowance or disallowance of a claim in a bankruptcy proceeding is entitled to the same conclusive effect as the judgments of other courts. Katchen v. Landy, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); United States v. Estes, 448 F.Supp. 971 (N.D.Tex.1978); Walter E. Heller & Co., supra. The fact that the judgment was rendered after a hearing at which plaintiff and his attorney chose not to appear, and thus that it may be likened to a default judgment, does not affect the conclusive nature of the judgment. "A judgment of a court having jurisdiction of the parties and of the subject-matter operates as res judicata, in the absence of fraud or collusion, even if obtained upon a default." Riehle v. Margolies, 279 U.S. 218, 225, 49 S.Ct. 310, 313, 73 L.Ed. 669 (1929). Moreover, the plaintiff's proof of claim in the Chapter XI proceeding constituted "prima facie evidence of the validity and amount of the claim," Rules Bankr.Proc. Rules 301(b), 11-33(a), 11 U.S.C.A., which Tri-City rebutted with the auditor's report. Thus, the traditional hesitancy to use a true default judgment as collateral estoppel is inappropriate here, where each side has introduced proof on the adjudicated issue.
Plaintiff has not alleged that fraud or collusion tainted the district court's order. Plaintiff does not recall signing the proof of claim, plaintiff's deposition at 152, but the claimant's signature is not required on the proof of claim form. Rules Bankr.Proc. Rules 11-33(a), 301(a), 11 U.S.C.A. Plaintiff has not stated that the attorney who submitted the claim, the same who filed plaintiff's complaint in Tennessee state court, was not authorized to do so. It does not appear from the order itself that notice of the hearing was sent to the plaintiff, and the applicable rules require such notice, Rules Bankr.Proc. Rules 11-33(e), 306(c), 11 U.S.C.A., but this Court will not assume that the district court did not provide such notice. Moreover, even if plaintiff himself did not receive such notice, he has not denied the authority of his attorney to submit the proof of claim; such authority did not require evidencing by a written power of attorney. Rules Bankr.Proc. Rule 910, 11 U.S.C.A. Therefore, it is not unfair, for purposes of deciding the present issue, to deem the attorney to have been authorized also to receive notice of the objection to the proof of claim and hearing thereon.
Fairly taken, plaintiff's statements concerning the bankruptcy proceeding amount to the argument that because he lived in St. Louis, it was difficult for him to conduct the litigation, and it was not worth his or his attorney's time to go to the hearing in Johnson City to contest Tri-City's introduction of the auditor's report. Plaintiff has thus challenged the fairness of his opportunity to be heard in the prior adjudication, the final requisite for the applicability of collateral estoppel.
It is true that when a party has been forced to litigate an issue in an inconvenient forum, it may be considered unfair to estop him in a subsequent action against a different party from re-litigating the issue. However, plaintiff in the instant action had originally chosen the state court at Kingsport, Tennessee, as his forum, at a time when he lived in Newport News, Virginia. Having chosen to institute an action there, and to allow it to remain open until the filing of Tri-City's Chapter XI petition, which automatically stayed the proceedings in the state court, Rules Bankr.Proc. Rule 11-44, 11 U.S.C.A., plaintiff may not now complain that a court in eastern Tennessee was an inconvenient forum. Johnson City, Tennessee, the location of the bankruptcy *371 proceeding, is scarcely farther from St. Louis than Kingsport, Tennessee, is from Newport News, Virginia. "[I]t would be anomalous to consider the fairness of his forum when it was he himself who chose the forum." James Talcott, Inc., supra, 444 F.2d at 462. We find no unfairness in holding the plaintiff bound by a decision rendered in the district court in Tennessee at a time when the plaintiff had an action pending in a nearby state court.
Nor was plaintiff denied "procedural, substantive, or evidentiary opportunities to be heard," Oldham v. Pritchett, supra, at 279, in the Chapter XI proceeding. Tri-City's objection to the plaintiff's claim constituted a "contested matter" under the Bankruptcy Rules, making the provisions of Rule 914 applicable. 3 Collier, Bankruptcy, ¶ 57.18 (1974). Rule 914 incorporates numerous provisions of Part VII of the Rules which in turn apply many of the Federal Rules of Civil Procedure. Moreover, it must be assumed that many of plaintiff's potential witnesses resided in the Johnson City area. In sum, plaintiff had a full and fair opportunity to litigate his claim; he simply chose not to avail himself of that opportunity.
The Court concludes that all of the requisites for the applicability of collateral estoppel are present in this action. The amount in controversy will therefore be limited to $1,700.

ON MOTIONS TO SET ASIDE ORDER AND LEAVE TO FILE AMENDED COMPLAINT
This Court by order dated November 16, 1979, limited the amount in controversy in this action to $1,700.00 due to the collateral estoppel effect of an order entered in a bankruptcy proceeding in the United States District Court for the Eastern District of Tennessee. The plaintiff has now moved this Court to set aside its order of November 16, and has also moved for leave to file an amended complaint.
Plaintiff argues, in his motion to set aside this Court's order, that the bankruptcy court's order was tainted by fraud; that the audit on which the bankruptcy court's order was based was not introduced into evidence in that proceeding; and that the issues before the bankruptcy court were not identical to those before this Court, so that collateral estoppel does not apply. The plaintiff has introduced in support of his motion a letter written to plaintiff's former attorney by the attorney for the firm which later initiated the bankruptcy proceeding. The letter indicates that the audit at issue disclosed that plaintiff was owed approximately $4,024.47 in unpaid commissions on the ten jobs which were the subject of plaintiff's Tennessee complaint, as well as $1,250.00 in override commission. The letter shows that Tri-City's attorney deducted, from the total figure of $5,274.47, setoffs for two other jobs for which plaintiff had allegedly been overpaid, and also reduced the figures by estimates of the percentages of the ten jobs left uncompleted at the time of plaintiff's departure from Tri-City. The letter concluded that plaintiff was actually entitled to only $639.62.
Plaintiff thus argues that the audit itself disclosed a debt to plaintiff of $5,300.00, not of $1,700.00, as was apparently represented to the bankruptcy court. Defendant has not responded to plaintiff's motion.
Whether or not the bankruptcy court based its order on a misrepresentation of what the auditor's report disclosed,[*] the report itself not having come into evidence, this Court concludes that collateral estoppel is nevertheless fully applicable. The objection sent to plaintiff's former attorney, prior to the bankruptcy hearing, plainly stated
"The debtor . . . only owes the claimant . . . the sum of $1,700.00, as has been ascertained and determined by an audit made by Stuart Lawson, C.P.A., of the firm of Hull, Carriger & Winn, C.P.A., Johnson City, Tennessee, at the joint request and expense of the claimant and the debtor."
*372 Thus, if any misrepresentation occurred at the bankruptcy hearing, the plaintiff's attorney had been fully forewarned of its likelihood. He chose not to contest it.
The courts have consistently considered, in determining whether or not a judgment should be set aside on grounds of fraud, the degree of diligence shown in the earlier action by the party seeking relief. This rule was stated by the United States Supreme Court in Marshall v. Holmes, 141 U.S. 589, 600, 12 S.Ct. 62, 65, 35 L.Ed. 870 (1891): "[E]quity will not interfere with a judgment at law . . . if [the party seeking relief] could, by the exercise of diligence, have availed himself of that defense in the action at law to which he was a party. This requirement of diligence is, as it ought to be, enforced with strictness."
In a Fifth Circuit case involving a litigant's attempt to avoid the res judicata effect of an earlier judgment allegedly obtained in part through fraudulent representations about the amount of an arbitration award, the party seeking relief had defaulted at the hearing which resulted in the earlier judgment. The Fifth Circuit held that the party was not entitled to relief:
"first because there is no claim presented that the fraud was extrinsic, that is that it prevented a trial of issues determinative of the controversy, United States v. Throckmorton, [8 Otto 61] 98 U.S. 61, 25 L.Ed. 93; . . . The appellant had every opportunity to litigate the case in New York. It failed through its negligence or deliberate omission to do so and was not prevented from doing so by any act of appellee."
Midessa Television Co. v. Motion Pictures for Television, 290 F.2d 203, 204-05 (5th Cir.), cert. denied 368 U.S. 827, 82 S.Ct. 47, 7 L.Ed.2d 30 (1961). See Note, Attacking Fraudulently Obtained Judgments in the Federal Courts, 48 Iowa L.Rev. 398 (1963), (indicating that the majority of state courts follow the Throckmorton rule and do not provide relief from perjurious testimony.)[**]
For the foregoing reasons, this Court concludes that the alleged fraud in the bankruptcy proceeding is irrelevant to the collateral estoppel effect of the bankruptcy court's order. Moreover, the Court finds no merit in plaintiff's argument, that the present issues are not identical with those of the bankruptcy proceeding because in that proceeding Tri-City apparently took setoffs on two jobs for which the plaintiff had not attempted to recover commissions. The Court reads the plaintiff's present complaint to allege the same employment contract as that alleged in the plaintiff's Tennessee action, except for the fact of agency. In paragraph 7 of the instant complaint, plaintiff alleges that from March of 1972 until December of 1973, plaintiff was a full-time employee under his contract with defendant Trane; in paragraph IV of the Tennessee complaint, upon which plaintiff's bankruptcy proof of claim was obviously founded, plaintiff alleged that during the same period of time he was a full-time employee for Tri-City. There can be no question but that the contracts alleged are one and the same. Any setoffs to which Tri-City may have been entitled under the contract are also available to Trane. The Court observes that its reading of the complaints will preclude the instant defendant *373 from presenting any evidence at trial that any of the ten jobs put at issue by plaintiff in this action did not involve Trane equipment. The amount of damages, if any, due to unpaid commissions and setoffs thereon is fixed at $1,700.00.
In addition, the Court will deny plaintiff leave to amend his complaint. Plaintiff conducted no discovery in this action until after he had first requested leave to amend. The defendant had already conducted extensive discovery, including the deposing of Brooke Stanley in Johnson City, Tennessee. The case has already been ready for trial once, eleven days before plaintiff first requested leave to amend, but was not reached. The granting of plaintiff's motion at this late date would involve considerable prejudice to defendant, and plaintiff's delay in attempting to introduce new theories (notably, fraud) into this lawsuit is totally inexplicable. Therefore, plaintiff's motion for leave to amend will be denied. Mercantile T. C. N. A. v. Inland Marine Products Corp., 542 F.2d 1010 (8th Cir. 1976).
NOTES
[*] Bankruptcy Act of July 1, 1898, C. 541, 30 Stat. 544, as amended (repealed 1978).
[*] This Court cannot say that the bankruptcy court's order necessarily reflects any misrepresentations; the attorney for the bankrupt may well have engaged in a lengthy explanation which the court summarized by saying that "it [was] made to appear" that the audit disclosed a debt of $1,700.00. However, the origin of the $1,700.00 figure is not totally clear.
[**] While this diversity action will be governed by state law, the issue of the collateral estoppel effect in this action of a prior decision rendered in a federal bankruptcy court in Tennessee is probably a matter of federal law. Cf. Aerojet-General Corporation v. Askew, 511 F.2d 710 (5th Cir. 1975) [federal law governs the res judicata effect in a diversity action of a prior diversity judgmentan issue left undecided by the Eighth Circuit in Gerrard v. Larsen, 517 F.2d 1127 (8th Cir. 1975) and Oldham v. Pritchett, 599 F.2d 274 (8th Cir. 1979).] See 1A Moore's Federal Practice ¶ 0.311[2]. However, it is unnecessary to decide the issue here; both the Tennessee and Missouri courts adhere to the rule that judgments may be set aside due to extrinsic fraud or fraud upon the Court, but not to intrinsic fraud such as perjury. Henley v. Hastings, 441 S.W.2d 64 (Tenn.App.1968); Vincel v. Vincel, 439 S.W.2d 227 (Mo.App.1969).

We think it clear that the fraud referred to in Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929), cited by this Court in its prior order for the proposition that a default judgment, absent fraud, is entitled to res judicata effect, is an extrinsic fraud which produces the default.