**Charles L. JORDAN, Plaintiff-Appellant,**

v.

**COUNTY OF LOS ANGELES,
Defendant-Appellee.**

**No. 79–3112.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 19, 1980.

Decided Feb. 24, 1982.

---

Walter Cochran-Bond, Taylor, Roth & Hunt, Los Angeles, Cal., argued, for plaintiff-appellant; A. Thomas Hunt, Los Angeles, Cal., on brief.

Alan Terakawa, Deputy County Counsel, Los Angeles, Cal., for defendant-appellee.

Before TANG, SCHROEDER and NELSON, Circuit Judges.

TANG, Circuit Judge:

Jordan filed an employment discrimination class action against the County of Los Angeles, alleging that the County's failure to hire persons because of their arrest records, juvenile records, and marijuana conviction records violates Title VII and 42 U.S.C. § 1981. Jordan's motions for class certification, partial summary judgment, and leave to amend his complaint were denied. After judgment was entered on Jordan's individual claims, he appealed each of these orders. We reverse the order denying class certification, affirm the order denying Jordan leave to amend his complaint, and decline to review the order denying Jordan's motion for partial summary judgment. The cause is remanded to the district court for further proceedings.

I.

In June 1976, appellant Charles L. Jordan (Jordan), a black male, filed an action against the County of Los Angeles (County), alleging that it had violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981 by withholding him from appointment to the position of custodian in September 1973 based upon his juvenile record. Jordan pled a class action, claiming that disqualification based upon applicants' juvenile records disproportionately impacts upon blacks.

In September 1976, Jordan amended his complaint and additionally alleged that dis-

qualification based upon his arrest record and his conviction for a marijuana-related offense also violated Title VII and section 1981. Each separate cause of action involving the three types of criminal record, *i.e.*, juvenile record, arrest record, and marijuana conviction record, was pled as a class action. Jordan's amended complaint further alleged that disqualification based upon each type of criminal record impermissibly discriminated against males.

In October 1977, the parties entered into a stipulation of uncontested facts for purposes of cross-motions for summary judgment and a second stipulation for purposes of Jordan's motion for class certification. Jordan thereafter moved for partial summary judgment and class certification. In December, the district court denied the motion for partial summary judgment on the grounds that genuine issues of fact existed, and denied the motion for class certification because essential facts stipulated to by the parties were unsupported by the record.

In March 1978, Jordan sought leave to amend his complaint in order to replace the Title VII sex discrimination claims with a constitutionally based action under the equal protection clause. The district court granted the portion of the motion that sought to delete the Title VII sex discrimination claims but denied the portion that sought to add causes of action under the equal protection clause.

Jordan filed a second class certification motion in April 1978. In July, the district court denied the motion, finding that Jordan had failed to satisfy the requirements of Federal Rule of Civil Procedure 23. In October, the parties entered into a settlement whereby, in exchange for $500, Jordan agreed to release his individual claims against the County. Pursuant to the settlement agreement, final judgment was entered on January 15, 1979.

On January 19, 1979, Jordan filed a notice of appeal seeking review of the orders de-

nying partial summary judgment, denying in part leave to amend his first amended complaint, and denying class certification. In September, the County moved to dismiss the appeal on the grounds that Jordan's settlement rendered his individual claims moot and deprived this court of jurisdiction to address the appeal due to the absence of a case or controversy under Article III. Relying upon our decision in *Vun Cannon v. Breed*, 565 F.2d 1096 (9th Cir. 1977), a motions panel dismissed Jordan's appeal for lack of a case or controversy on November 16.[1]

Jordan subsequently filed a motion for reconsideration on November 30 and a motion to add parties on April 19, 1980. In light of the Supreme Court's decision in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), rendered on March 19, Jordan's motion for reconsideration was granted and the question whether the appeal presents a justiciable case or controversy despite the settlement agreement, or whether the settlement precludes Jordan from challenging the order denying class certification, was referred to the merits panel. The order dismissing the appeal was vacated and the question whether putative members of the uncertified class should be joined as named plaintiffs-appellants under Federal Rule of Civil Procedure 21 or whether they should be allowed to intervene under Federal Rule of Civil Procedure 24 was referred to the merits panel.

## II.

Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies." Federal courts may only entertain "questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968).

---

1. In *Vun Cannon*, we held that in the absence of a properly certified class, we did not have jurisdiction to review the dismissal of a purported class action where the individual claim of the class representative had become moot.

Thus, federal courts are without jurisdiction and no justiciable controversy is presented when the questions sought to be adjudicated are moot, *i.e.*, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).

The second aspect of the mootness doctrine, the parties' interest in the litigation, has also been referred to as the "personal stake" requirement. *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 755, 96 S.Ct. 1251, 1259–60, 47 L.Ed.2d 444 (1976). The personal stake prerequisite is designed to insure that the federal judicial power is limited to disputes capable of judicial resolution. A party without the requisite personal interest in the litigation is without "standing" to prosecute the action. *See Flast v. Cohen*, 392 U.S. at 101, 88 S.Ct. at 1953.

■ At the outset therefore we must decide whether the settlement agreement entered into by the named plaintiff in the absence of a certified class renders this action moot and correspondingly deprives him of standing to prosecute this appeal. As just noted, resolution of this question turns on whether there is a "live" issue between the parties and whether the named plaintiff appellant has a "personal stake" in the outcome.

### A.

■ The first related question before us is whether there is a live controversy between the County and at least some members of the class Jordan seeks to represent. We find that the attempt by several members of the putative class to intervene as party plaintiffs clearly demonstrates the existence of a live controversy. *See United States Parole Commission v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63

L.Ed.2d 479 (1980). The County contends, however, that it has revised its hiring policies so that the new guidelines exclude any potentially impermissible consideration of arrest or conviction records. Thus, it argues that a live issue is lacking and no case or controversy exists. To the contrary, Jordan argues that under the new procedures the County's continued consideration of juvenile offense and marijuana-related conviction records results in disqualification of a substantially disproportionate number of blacks. He also asserts that the County's claim that it no longer considers arrest records as being disqualifying is a mere restatement of its previous policy which the County has not adhered to.

We do not reach the merits of the controversy between the parties since a named plaintiff may not press the appeal on the merits until a class has been certified. *See Deposit Guaranty National Bank v. Roper*, 445 U.S. at 336, 100 S.Ct. at 1172–73.[2] We note, however, that whether the County's hiring considerations are validly related to job performance or whether, in the absence of compelling justification, the policies burden or benefit one race as opposed to another in violation of Title VII, is the heart of the dispute between the parties. Until this issue is resolved by judicial review, it necessarily remains a live controversy. Whether this action is moot therefore turns not on whether there exists a live controversy, but on whether in light of the settlement agreement, the named representative has a personal stake in the outcome of the controversy.

### B.

As noted above, the "personal stake" requirement is designed to assure that the case is capable of judicial resolution. "In order to satisfy Article III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result

---

**2.** For this reason, we decline to review the district court's order denying Jordan's motion for partial summary judgment.

of the putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66 (1979). Only where this personal stake requirement is met can a judicial decision redress the plaintiff's injury or accrue to his or her benefit. The County argues that Jordan has no personal stake in the outcome because the settlement agreement has totally satisfied his individual claims. The terms of the settlement agreement and the release, however, convince us otherwise.

The stipulation to entry of final judgment provided in part:

> [A]ll parties understand that the settlement of Plaintiff Jordan's individual claims will not in any way affect the class action aspects of this case.

The release between Jordan and the County in part stated:

> This is a release of all claims, which claims arose by reason of the withhold from certification of CHARLES L. JORDAN from the position of custodian under Rule 7.04 of the Rules of the Civil Service Commission of County of Los Angeles on or about September 19, 1973....
>
> *        *        *        *        *        *
>
> ... CHARLES L. JORDAN ... releases and fully discharges the County of Los Angeles ... from any and all claims ... that [he] now, or in the future, may have for ... losses or damages ... arising directly or indirectly from said incident [of withhold from certification for ap-

pointment to the position of Custodian on or about September 19, 1973]. . . .

Although the settlement agreement and release resolved Jordan's claim for damages arising out of the disposition of his 1973 job application, neither document resolved Jordan's claim for injunctive relief in the event a class is certified and Jordan prevails.[3] The agreement therefore did not dispose of all of Jordan's claims against the County and consequently did not completely divest him of his personal stake in the controversy[4]. In *McLaughlin v. Hoffman*, 547 F.2d 918 (5th Cir. 1977), the court considered a similar situation and arrived at a similar conclusion.

In *McLaughlin*, the named plaintiff filed a Title VII class action challenging defendant's employment practices on behalf of all past, present, and future black and Latin American employees of the defendant. The district court denied class certification and the named plaintiff proceeded to trial on his individual claims. After an award of back pay, attorney's fees, expenses, and injunctive relief directing the employer to cease denying him a promotion, the plaintiff appealed the adverse class certification ruling. In holding that plaintiff McLaughlin retained a personal stake in the controversy, notwithstanding the relief he had obtained, the Fifth Circuit found it dispositive that any future injunctive relief granted the class would accrue to the named plaintiff as a class member:

> Here a live controversy still exists between appellant McLaughlin and appel-

---

**3.** Jordan has reapplied for a position with the County and thus would stand to benefit from the class-wide injunctive relief prayed for in his complaint, prohibiting the County from disqualifying applicants' based upon their juvenile, arrest, and marijuana conviction records.

**4.** In *United States Parole Commission v. Geraghty*, 445 U.S. 338, 404, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980), the Court held that "an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied." The Court, however, expressed no view whether Article III

would permit a named plaintiff who settles his or her individual claims after denial of class certification to appeal the adverse class certification order. *Id.* at 404 n.10, 100 S.Ct. at 1212 n.10. Because we hold that the agreement entered into by Jordan and the County did not settle all of Jordan's claims, we need not reach the question reserved by the *Geraghty* court in footnote 10. *Cf. Deposit Guaranty National Bank v. Roper*, 455 U.S. 326, 332, 100 S.Ct. 1146, 1170, 63 L.Ed.2d 427 (1980) (settlement of *all* claims moots case and deprives the court of jurisdiction over the controversy of the named plaintiffs).

lees. In addition to the relief awarded to appellant on an individual basis, the complaint requested class-wide injunctive relief directing appellees to dismantle their allegedly discriminatory hiring and promotion system. As a member of the class alleged in the complaint, appellant stands to benefit in the future from any class-wide relief that may be granted by the district court, notwithstanding the fact that he was granted back pay, expenses, attorney's fees, and injunctive relief relative to his sought-after promotion ... That is, appellant stands to benefit directly from the injunctive relief he requested on behalf of his class, and the controversy between appellant and appellees is therefore sufficiently concrete to support Article III jurisdiction.

547 F.2d at 920–21 (footnotes and citations omitted). *See also Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 277 (10th Cir. 1977) (named plaintiff who continued to be an employee of defendant had past, present, and future interest in outcome of case and thereby standing to maintain action under Title VII).

The settlement did not provide for Jordan to be employed by the County. As a current and potential future applicant, Jordan has a direct stake in seeing that this case is brought as a class action and in obtaining an injunction against the County to require it to cease the employment practices challenged in his complaint.[5]

### III.

■ We now focus our review on the question whether the district court's class certification ruling was proper. The decision to grant or deny class certification is within the trial court's discretion and will be reversed on appeal only if the court abused its discretion, *Yamamoto v. Omiya*, 564 F.2d 1319, 1325 (9th Cir. 1977), or if the court applied impermissible legal standards or criteria, *Carey v. Greyhound Bus Co.*, 500 F.2d 1372, 1380 (5th Cir. 1974).

■ The district court denied Jordan's motion for class certification on the grounds that the case failed to satisfy the mandatory prerequisites of Federal Rule of Civil Procedure 23(a).[6] While "[m]ere invocation of the language of Rule 23 in Title VII suits is no mystical legal talisman guaranteeing class treatment," *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977), Title VII actions are by their nature class complaints and the requirements of Rule 23(a) should be liberally interpreted and applied "so as not to undermine the purpose and effectiveness of Title VII in eradicating class-based discrimination." *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d 1330, 1334 (9th Cir. 1977). *Accord, East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977) ("suits alleging racial or ethnic discrimination are often by their very nature class suits .... Common questions of law are typically present"); *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 340 (10th Cir. 1975) ("[c]lass actions are generally appropriate in Title VII employment discrimination cases").[7] Thus, a trial court's discretion in determining whether a Title VII suit will proceed as a class action is circumscribed by

---

**5.** Because we hold that appellant has standing to appeal the order denying class certification, there is no need for us to consider whether the motion to add parties should be granted in order to prevent the case from being moot.

**6.** Rule 23(a) provides:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**7.** In the course of enacting the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, the Senate Labor and Public Welfare Committee made the following comment in recommending that class action lawsuits not be limited to recovery for back pay: "The [Senate] Committee agrees with the courts that Title VII actions are by their nature class complaints

the broad remedial purposes of the Civil Rights Act. *Gay v. Waiters' and Dairy Lunchmen's Union*, 549 F.2d at 1334.

### A.

■ With respect to the numerosity requirement, the stipulation entered into by the parties disclosed that at least 110 persons fell within the three classes Jordan sought to represent.[8] According to the stipulation, out of those persons who had been denied jobs by the County, 39 had marijuana convictions, 64 had arrest records, and 71 had juvenile offense records. Based upon this information, the district court concluded that each of the separate classes was not too large for joinder.

■ Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable. *See*

3B *Moore's Federal Practice* ¶ 23.05[1] (2d ed. 1974). Where the class is not so numerous, however, the number of class members does not weigh as heavily in determining whether joinder would be infeasible. In the latter situation, other factors such as the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought, should be considered in determining impracticability of joinder. *See* 1 H. Newberg, *Class Actions* § 1105 (1977).[9]

Although we would be inclined to find the numerosity requirement in the present case satisfied solely on the basis of the number of ascertained class members, *i.e.*, 39, 64, and 71, we need not do so since the presence of other indicia of impracticability persuade us that the requirement has been met.[10] First, the relatively small size of each class member's claim and the probabil-

---

and that any restrictions on such actions would greatly undermine the effectiveness of Title VII." S.Rep.No. 92–415, 92d Cong. 1st Sess. 27 (1971), U.S.Code Cong. & Admin.News 1972, p. 2137. *See also* 118 Cong.Rec. 4942 (1972).

**8.** In Jordan's amended complaint, each separate cause of action based upon the County's consideration of juvenile records, arrest records, and marijuana conviction records was pled as a class action.

**9.** For example, in *Dale Electronics Inc. v. RCL Electronics, Inc.*, 53 F.R.D. 531 (D.N.H.1971), the court held that joinder of 13 class members was clearly impracticable where the members were spread out from North Carolina to Nebraska and from California to New York. In *Swanson v. American Consumer Industries*, 415 F.2d 1326 (7th Cir. 1969), the court held that 40 class members was a sufficiently numerous group to satisfy Rule 23(a)(1) where the class members were widely scattered and their individual claims were too small to warrant instituting separate actions. And, in *Afro American Patrolmen's League v. Duck*, 366 F.Supp. 1095 (N.D.Ohio 1973), *aff'd in part, remanded in part*, 503 F.2d 294 (6th Cir. 1974), a Title VII employment discrimination class action seeking injunctive relief, the court found the numerosity requirement to have been met based upon the large number of future class members, even though the class members' identities could not be precisely ascertained. *See also* 7 Wright and Miller, *Federal Practice and Procedure* § 1771, at 662–63 (1972) (the

courts' permissive attitude toward Title VII suits is reflected by a liberalized application of the Rule 23(a) requirements in Rule 23(b)(2) cases).

**10.** Classes with fewer known class members have been certified in the following cases: *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (41–46 class members); *Cross v. National Trust Life Insurance Co.*, 553 F.2d 1026, 1030 (6th Cir. 1977) (7 class members); *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (35 class members); *Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) (51 class members); *Arkansas Education Ass'n v. Board of Education*, 446 F.2d 763, 765 (8th Cir. 1971) (20 class members); *Cypress v. Newport News Hospital Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 class members); *Colston v. Maryland Cup Corp.*, 18 Fair Empl. Prac. Cas. 83, 85 (D.Md.1978) (25 class members); *Smith v. General Motors Corp.*, 14 Fair Empl.Prac.Cas. 987, 991 (E.D.Mich.1977) (35 class members); *United States v. Terminal Transport Co.*, 13 Fair Empl.Prac.Cas. 1284, 1290 (N.D.Ga.1976) (75 employees and 23 applicants in the class); *Crenshaw v. Maloney*, 13 Fair Empl.Prac.Cas. 154, 155 (D.Conn.1976) (16 class members); *Watson v. City of New Orleans*, 12 Fair Empl.Prac.Cas. 1625, 1625–26 (E.D.La.1974) (28 employees and 50 applicants in the class); *Sabala v. Western Gillette, Inc.*, 362 F.Supp. 1142, 1146–47 (S.D.Tex.1973) (26 class members); *Local 246, Utility Workers v. Southern California Edison Co.*, 2 Fair Empl.

ity that the class members may be difficult to locate combine to make it impracticable for individual class members to join in the lawsuit by instituting separate actions. *See Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24 (N.D.Cal.1977); *Marshall v. Electric Hose & Rubber Co.*, 68 F.R.D. 287 (D.Del.1975). Second, the class is composed of unnamed and unknown future black applicants who may be discriminated against by the County's employment practices. The joinder of unknown individuals is inherently impracticable. *See Jack v. American Linen Supply Co.*, 498 F.2d 122 (5th Cir. 1974); *Scott v. University of Delaware*, 68 F.R.D. 606 (D.C.Del.1975). Accordingly, the district court erred in denying class certification for failure to satisfy the numerosity requirement.

### B.

Rule 23(a)(2) requires that there be a common question of law or fact among the members of the class. The district court found that the commonality requirement had not been met because the proposed class includes persons who have been denied employment solely on the basis of their criminal records and persons whose criminal records were only a contributing factor. Thus, the court concluded that there are diverse questions of law and fact as to the various other factors upon which the denial of employment was based.

█ In reaching its conclusion that the commonality prerequisite had not been satisfied, we think the district court applied incorrect legal criteria. Rule 23(a)(2) does not require that every question of law or fact be common to every member of the class. *See Mosley v. General Motors Corp.*, 497 F.2d 1330, 1334 (8th Cir. 1974); *Like v. Carter*, 448 F.2d 798 (8th Cir. 1971), *cert. denied*, 405 U.S. 1045, 92 S.Ct. 1309, 31 L.Ed.2d 588 (1972); *Fox v. Prudent Resources Trust*, 69 F.R.D. 74 (E.D.Pa.1975); *Cottrell v. Virginia Electric Power Co.*, 62 Prac.Cas. 328, 329–30 (C.D.Cal.1969) (26 class

F.R.D. 516 (E.D.Va.1974). The commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *American Finance System, Inc. v. Harlow*, 65 F.R.D. 94, 107 (D.Md.1974) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964)). *See also Gibson v. Local 40, Supercargoes & Checkers, Etc.*, 543 F.2d 1259, 1264 (9th Cir. 1976).

█ Courts that have analyzed Rule 23(a)(2) have generally given it a permissive application in a variety of substantive law areas so that the commonality requirement is usually found to be satisfied. 7 Wright & Miller, *Federal Practice and Procedure* § 1763, at 604 (1974). In employment discrimination cases brought under Title VII, the legality of defendant's practices or policies will usually be a question common to the class, and the existence of different factual questions with respect to various employees will not defeat satisfaction of the commonality requirement. As the court explained in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1124 (5th Cir. 1969):

> While it is true, as the lower court points out, that there are different factual questions with regard to different employees, it is also true that the 'Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to the class.'

*See also Mack v. General Electric Co.*, 329 F.Supp. 72, 75–76 (E.D.Pa.1971); *Bennett v. Gravelle*, 323 F.Supp. 203, 219 (D.Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971), *cert. denied*, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972).

█ In the present case, Jordan seeks to represent classes composed of past, present, and future black applicants, excluding applicants for sworn law enforcement positions, who have been or will be denied employment members).

ployment with the County based in whole or in part upon that person's juvenile record, arrest record, or marijuana-related conviction record. The question of law common to all these class members is whether each type of criminal record is validly related to job performance or whether, in the absence of compelling justification, disqualification based upon such records impermissibly discriminates against blacks. The very existence of such a policy, if shown to be discriminatory, affects all members of the class and is a common question sufficient to support a class action under Title VII. *Senter v. General Motors Corp.*, 532 F.2d 511, 524 (6th Cir.) *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d at 1124. Even though some relief regarding damages may need to be tailored to redress particular class members' injuries, the injunctive relief sought pursuant to Rule 23(b)(2) will, if granted, inure to the benefit of all class members.[11]

### C.

The third requirement necessary to maintain a class action under Rule 23(a) is that the claims or defenses of the named representative be typical of the claims or defenses of the class. The district court found that Jordan had failed to satisfy the typicality prerequisite because his failure to obtain employment may have resulted from a poor prior work record and not from any impermissible consideration of his criminal records by the County. Although Jordan argued that the court should not have considered the merits of the case in connection with the class certification motion, the district court felt that the merits had to be addressed in order to rule on the motion.

■ The typicality requirement is designed to assure that the named representative's interests are aligned with those of the class. Where there is such an alignment of interests, a named plaintiff who vigorously pursues his or her own interests will necessarily advance the interests of the class. In this respect, the typicality prerequisite is closely related to both the 23(a)(2) requirement that there be common questions of law or fact and the 23(a)(4) requirement that the named plaintiff adequately protect the interests of the class.

■ The named plaintiff's claim will be typical of the class where there is a nexus between the injury suffered by the plaintiff and the injury suffered by the class. *Long v. Sapp*, 502 F.2d 34, 42–43 (5th Cir. 1974). Thus, a named plaintiff's claim is typical if it stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory. *See Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975); *Smith v. B & O Railroad*, 473 F.Supp. 572, 581 (D.Md.1979); 1 H. Newberg, *Class Actions*, § 1115 (1977).

■ As long as the named representative's claim arises from the same event, practice, or course of conduct that forms the basis of the class claims, and is based upon the same legal theory, varying factual differences between the claims or defenses of the class and the class representative will not render the named representative's claim atypical. *Smith v. B & O Railroad*, 473 F.Supp. at 581. Moreover, the class representative need not demonstrate a likelihood of success on the merits in order to maintain a class action. As the Court stated in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974):

[N]othing in either the language or history of Rule 23 ... gives a court any grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

---

**11.** Rule 23(b)(2) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition the party opposing the class has acted or refused to act on

authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.

In so ruling, the Court agreed with the Fifth Circuit's conclusion in *Miller v. Mackey International*, 452 F.2d 424, 427 (5th Cir. 1971), where the court said: "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met."

Our examination of the claims of the class representative vis-a-vis the claims of the class persuades us that the typicality prerequisite has been satisfied. Both the named plaintiff and the putative class members allege injury or potential injury resulting from the County's alleged discriminatory practice of denying employment to persons with three specific types of criminal record. As both the claims of the named representative and the claims of the class stem from the same practice of the defendant and are based upon the same legal theory, the required nexus is present. The existence of this nexus is further demonstrated by the fact that the requested injunctive relief will, if granted, inure to the benefit of the class and the class representative as a member thereof. *See, e.g., Black Grievance Committee v. Philadelphia Electric Co.*, 79 F.R.D. 98 (E.D.Pa.1978); *Buchholtz v. Swift & Co.*, 62 F.R.D. 581 (D.Minn. 1973). The district court's speculation here that the named representative was not hired due to his prior work history is the type of preliminary inquiry into the merits of the action that the Supreme Court in *Eisen* held had no place in the class certification determination.

Additionally, the district court found and the County argues that common questions of law or fact are not present and Jordan's claims are atypical of the class because of the various job-related factors that the County must consider with respect to each job in its hiring decisions. The court proposed to limit the class to custodians like Jordan, since arrest and other similar records could be related to job competency. In support of this limitation, the court gave the example of where a child-molestor's juvenile record may be relevant to the school bus driver's job or where a marijuana conviction may relate to the applicant's ability to drive a motor vehicle. We reject this proposed limitation.

Where, as in the present case, the named plaintiff makes an "across-the-board" attack on the defendant's employment practices, alleging that the policies are racially discriminatory as they apply to blacks, the named plaintiff is entitled to represent all employees who have allegedly suffered from the challenged practices even though some class members are not engaged in the same work as the named plaintiff. *See Rich v. Martin Marietta Corp.*, 522 F.2d at 344; *Johnson v. Georgia Highway Express*, 417 F.2d at 1124. Variations regarding qualifications and prior work records are typically present in Title VII employment discrimination cases. Where the common thread of discrimination is alleged to weave through the defendant's employment practices, the varying ways in which the alleged discriminatory policy affects different class members, if at all, should not preclude class certification. *See Gibson v. Local 40*, 543 F.2d at 1264; *Senter v. General Motors Corp.*, 532 F.2d at 524, *Harris v. Palm Spring Alpine Estates*, 329 F.2d 909, 914 (9th Cir. 1964).

The district court's reasons for restricting the class to custodians goes to the very merits of the action. As noted earlier, such an inquiry into the merits of the case is not proper at the class certification stage.[12] Moreover, restricting the class in the manner proposed would not be in accordance with the established policy of liberally applying Rule 23(a) requirements in Title VII cases and would contravene the purpose of

---

12. Any ruling on the merits of the action is more properly the subject of a Rule 12(b)(6) or a Rule 56 motion.

Title VII in eliminating class-based employment discrimination.

### D.

Under Rule 23(a)(4), the named representative must "fairly and adequately protect the interests of the class." This requires that the named representative's attorney be qualified, experienced, and generally capable to conduct the litigation, and that the named representative's interests not be antagonistic to the interests of the class. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir.) (citing *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

Although Jordan's attorney, Mr. Walter Cochran-Bond, has apparently been involved in a number of federal employment discrimination cases, the district court questioned his adequacy because he claimed only three years experience and because his papers before the court indicated some unfamiliarity with federal practice. Although Mr. Bond claimed to have associated counsel from the Center for Law in the Public Interest, the district court concluded the Center was not involved in the case since no attorney from the Center had signed any papers or made any recent appearance before the court. With respect to the interests of the named representative, the court found that Jordan's interests were antagonistic to those of the remaining class members because he may be required to defend charges at trial that he was denied a job due to his prior work record.

Based upon the papers filed in this court, including appellant's briefs, we are satisfied that Jordan's attorneys are qualified, experienced, and generally capable of conducting this class action litigation. While Mr. A. Thomas Hunt, counsel for the Center for Law in the Public Interest may not have been actively involved in the case in the district court, he apparently has taken an active role in the case since then, insofar as his name appears on all the papers filed in this court.[13]

We do not perceive of any interest of the class representative that is antagonistic to the interests of the class. Jordan's interest in eliminating any impermissible consideration of criminal records in the County's hiring decisions is coextensive with those of the remaining class members. The fact that Jordan may be required to disprove that he was not hired due to his prior work record does not establish that his interest in eradicating the challenged practices is antagonistic to the class.

In accordance with the foregoing, we hold that the district court applied impermissible legal criteria in denying Jordan's motion for class certification. The order denying the motion is reversed.

### IV.

Jordan also appeals the district court's order denying him leave to amend his complaint. Jordan sought to amend his complaint by adding an equal protection cause of action based on state law provisions that permit persons to have their criminal records sealed or expunged. His theory is that since some people are successful in having their records sealed, the County's consideration of the criminal records of those persons who did not have their records sealed results in treating similarly situated persons differently.

The district court denied Jordan's motion to amend because: (1) adding the new causes of action would require the County to conduct further discovery, resulting in additional expense and further delay; and (2) Jordan had not satisfactorily demonstrated why the additional causes of action were not included in the original complaint. Jor-

---

13. We emphasize that we are not necessarily disagreeing with the court's evaluation. We conclude only that the record now before us does not support the conclusion that the class does not have adequate legal counsel. The court on remand may condition class certification upon active participation as co-counsel of attorneys from the Center for Law in the Public Interest or other counsel the court deems adequate. *See Cullen v. New York State Civil Service Commission*, 435 F.Supp. 546, 560 (E.D.N.Y.), *appeal dismissed*, 566 F.2d 846 (2d Cir. 1977). The court is also free to re-evaluate the adequacy of counsel throughout the pendency of the action. Fed.R.Civ.P. 23(c)(1).

dan argues that the district court denied his motion without finding that the County would have been "unduly prejudiced" by the amendment.

Federal Rule of Civil Procedure 15(a) requires that leave to amend after a responsive pleading has been filed "shall be freely given when justice so requires." Although such motions under the Rule should be freely granted, the decision to grant such a motion is entrusted to the sound discretion of the trial court. *Barrett v. Independent Order of Foresters*, 625 F.2d 73 (5th Cir. 1980); *PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659 (9th Cir. 1969), *cert. denied*, 397 U.S. 918, 90 S.Ct. 924, 25 L.Ed.2d 99 (1970). The crucial factor in determining whether leave to amend should be granted is the resulting prejudice to the opposing party. Where no such prejudice is shown, leave to amend should be freely given. *See Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973); *see also Wyshak v. City National Bank*, 607 F.2d 824 (9th Cir. 1979). In *Howey* we found that the proffered amendment would not have unduly prejudiced the opposing party. We held that the trial judge should have inquired into whether the opposing party would have been required to conduct further discovery and suggested that had the amendment required the opposing party to conduct extensive discovery, the motion denying leave to amend may have been correct. 481 F.2d at 1191.

In the present case, the district court explicitly found that Jordan's amendment would have prejudiced the County by requiring it to engage in further discovery. Because Jordan's proposed amendment raised substantial issues of state law not closely connected with the issues raised under Title VII and section 1981, the County would have been required to conduct extensive, costly discovery in order to respond to the amended complaint. Moreover, the liberality of Rule 15(a) does not mean that amendment will be allowed regardless of the diligence of the moving party. Where the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied. *See Svoboda v. Trane*, 495 F.Supp. 367 (E.D.Mo. 1979), *aff'd*, 655 F.2d 898 (8th Cir. 1981); *Dow Corning Corp. v. General Electric Co.*, 461 F.Supp. 519 (N.D.N.Y.1978). Here, Jordan's attorneys have proffered no satisfactory reasons for failing to include the equal protection causes of action in the original complaint. On these facts, we find no abuse of discretion in the district court's denial of Jordan's motion to amend his complaint.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

SCHROEDER, Circuit Judge, concurring in part and dissenting in part:

This is an appeal from a denial of class certification. The majority holds that the class should be certified despite the fact that the party seeking to represent the class has voluntarily settled all of his individual claims against the defendant.

I agree with the majority that, on the basis of the record presented to the district court at the time of its class certification ruling, the putative representative's claim was typical of the claims of the class and that the class was sufficiently numerous to satisfy the requirements of Rule 23. I further agree with the statement by the majority in footnote 13 that any further proceedings should be conditioned upon active participation by counsel for plaintiff which the district court deems adequate.

I do not agree with the majority, however, that the appellant seeking to represent the class in this matter retains any personal stake after he has compromised all of his individual claims. The only person now before the court with anything tangible to gain from the litigation is the appellant's lawyer; I am not alone in finding that situation distasteful. *See, e.g., United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 422–24 & nn. 17, 18, 20 & 21, 100 S.Ct. 1202, 1222–23 & nn. 17, 18, 20 & 21, 63 L.Ed.2d 479 (1980) (Powell, J., dissenting); *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 351, 353 & n. 13, 357, 100 S.Ct. 1166, 1180, 1181 & n. 13, 1183, 63 L.Ed.2d 427 (1980) (Powell, J., dissenting).

Nevertheless, as I read the recent Supreme Court decisions in cases in which the representative party's individual claims have become moot, there is no fixed requirement that the "personal stake" survive until the litigation has run its course. That was the holding in *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), where the named plaintiff's claim became moot after the district court had granted class certification, and in *Geraghty, supra*, where the representative's claim became moot after the district court had denied class certification. These decisions have shifted the focus of the inquiry in such cases from the justiciability of the putative representative's claim, to the adequacy of his representation of the class. *See Geraghty, supra*, 445 U.S. at 405–06, 100 S.Ct. at 1214, *quoting Sosna, supra*, 419 U.S. at 403, 95 S.Ct. at 559; 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1776, at 39 (Supp.1981). *See also* Note, *Class Standing and the Class Representative*, 94 Harv.L.Rev. 1637, 1653–56 (1981).

The determination that class status should have been granted requires a further determination whether the representative plaintiff will continue to satisfy the requirements of Rule 23 that the class be fairly and adequately represented, notwithstanding the loss of a personal stake in the outcome.

13 C. Wright & A. Miller, *supra*, § 3533 at 40 (Pocket Part to Cumulative Supp. 1980).

The Supreme Court has indicated that what is needed is "vigorous advocacy," which "can be assured through means other than the traditional requirement of a 'personal stake in the outcome.'" *Geraghty, supra*, 445 U.S. at 404, 100 S.Ct. at 1212.

The precise qualities necessary for vigorous advocacy have yet to be spelled out by the Supreme Court. Nevertheless it appears to me that this appellant, who voluntarily settled his personal claims *in toto*, is in a far weaker position to provide such representation than was the appellant in *Geraghty*, whose claims had been mooted by circumstances beyond his control. I am unable to see how this appellant could possibly provide adequate, much less "vigorous," representation of the claims of others when he has seen to it that his own have been satisfied.

I recognize the possibility, however, that others may have relied upon this appellant's pursuit of the litigation. See *Rothman v. Gould*, 52 F.R.D. 494 (S.D.N.Y.1971) (passim), in which Judge Frankel discusses need to protect class members who may have relied for presentation of their claims, on "class" litigation brought by a party who later desires to settle his individual claims.

I would not permit this appellant to pursue this litigation; I would instead remand for consideration of possible intervention by other members of the putative class.