664 F.2d 1153
 27 Fair Empl.Prac.Cas. 1037,
27 Empl. Prac. Dec. P 32,320, 1 Ed. Law Rep. 779
 BLACK FACULTY ASSOCIATION OF MESA COLLEGE and Louis L.
Elloie, Jr., on behalf of themselves and all
others similarly situated, Plaintiffs-Appellants,
v.
SAN DIEGO COMMUNITY COLLEGE DISTRICT and San Diego Mesa
College, Defendants-Appellees.
 No. 79-3495, 79-3523.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 3, 1981.
Decided Dec. 28, 1981.
 
 Lloyd Edward Tooks, San Diego, Cal., for Black Faculty Ass'n.
 Lloyd M. Harmon, Jr., San Diego, Cal., for San Diego Comm. College, etc.
 Appeal from the United States District Court for the Southern District of California.
 Before HUG and ALARCON, Circuit Judges and MARSHALL*, District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 Plaintiffs Black Faculty Association of Mesa College (BFA) and Louis Elloie, Jr., on behalf of themselves and all others similarly situated, sued defendants San Diego Community College District (District) and San Diego Mesa College (Mesa) under 42 U.S.C. § 1981, to enjoin defendants' allegedly discriminatory hiring and promotion practices. In a court trial, the district court judge granted plaintiffs injunctive relief, costs, and attorneys' fees. All parties appealed. Because we conclude that all plaintiffs lack standing, we vacate the judgment of the district court.
 
 FACTS
 
 2
 Defendant Mesa College is one of several community colleges in the San Diego Community College District. Plaintiff Louis Elloie, Jr. is a black member of the Mesa faculty and chairman of BFA. Plaintiff BFA is an association at Mesa College. While all black members of the faculty are eligible to be members of BFA, the record indicates that only Elloie and Robert Michaels are members.[1] The record does not indicate the purpose and goals of BFA or the length of its existence.
 
 
 3
 In their complaint plaintiffs specifically alleged that Mesa's practices in hiring contract (permanent) and hourly (temporary) faculty, and its practices in appointment of supervisory personnel (promotion practices) were discriminatory on the basis of race and violative of 42 U.S.C. § 1981. Plaintiffs alleged that defendants (1) tailored job announcements specifically to accommodate and fit the qualifications of white persons seeking the announced positions; and (2) intentionally allowed white hourly instructors to work a sufficient number of excess hours to earn the right to obtain a contract (permanent position) without having to compete in the hiring process.
 
 
 4
 In his conclusions of law filed after the trial, the trial judge certified this action as a 23(b)(2) class action (Fed.R.Civ.P. 23(b)(2)). The class was certified as "all black instructors at San Diego Mesa College and all black persons in the City of San Diego who are qualified to be instructors at San Diego Mesa College." The trial judge did not hold a pretrial certification hearing, nor did he make any findings as to the numerosity of the class, the adequacy of the representation, or commonality of questions.
 
 
 5
 The trial court found that the procedure used to hire hourly (temporary) faculty had a disparate impact on black persons, and held that because the defendants offered no justification for the practice creating the disparate impact, a violation of § 1981 was proven. Further, the court found that a qualified black person (Dr. Self) was passed over for an administrative position, while an unqualified white person (Mrs. Decker) was hired, and this constituted a violation of § 1981. The district court granted the following relief: (1) that Mrs. Decker be removed from her administrative position unless she met the stated job qualifications by a certain date; (2) that a member of the Mesa black faculty be appointed Affirmative Action Officer in place of Mrs. Decker; (3) that the Affirmative Action Officer be given specific duties outlined in the court's order, to exercise in hiring and promotion, and (4) that written, objective standards be formulated for the hiring of hourly instructors.
 
 
 6
 All parties appealed from the judgment.
 
 STANDING
 
 7
 To satisfy the "case or controversy" requirement of Article III plaintiffs must show that they have suffered some actual or threatened injury as a result of defendants' alleged illegal conduct. To obtain and sustain a judgment, a plaintiff must establish facts sufficient to confer standing. Legal Aid Society of Alameda County v. Brennan, 608 F.2d 1319, 1333 & n. 26 (9th Cir. 1979), cert. denied, sub nom, Chamber of Commerce v. Legal Aid Society of Alameda County, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). See also United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973). These facts must show a direct, individualized injury. Warth v. Seldin, 422 U.S. 490, 498-502, 95 S.Ct. 2197, 2204-07, 45 L.Ed.2d 343 (1975). The injury must be such that it is likely to be redressed if the relief requested is granted. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979). Therefore, there must be a causal connection between the challenged conduct and the claimed injury; the plaintiff must have a personal stake in the outcome of the controversy. Neither of the named plaintiffs satisfies this standard.
 
 A. ELLOIE
 
 8
 Louis Elloie, Jr., a named plaintiff, is a faculty member at Mesa and chairman of the BFA. Elloie alleged that Mesa's hiring and promotion practices discriminated against black persons in violation of § 1981. We find, however, that he does not have standing to raise these claims.
 
 
 9
 Elloie was not injured, or threatened by any injury deriving from Mesa's hiring practices because he was hired by Mesa as a faculty member. Elloie cannot establish his own standing by asserting the rights of some hypothetical third parties who were allegedly harmed by Mesa's hiring practices. See Chavez v. Tempe Union High School District No. 213, 565 F.2d 1087, 1094 n.10 (9th Cir. 1977).
 
 
 10
 We also find that Elloie failed to establish his standing to challenge Mesa's promotion practices. Elloie never applied for a promotion. He testified that of the administrative positions which opened on campus during his tenure, he was qualified for one of them, that of Dean of Students. He did not claim, however, that he had any desire to be appointed to that position; he testified only that he believed filing an application to be Dean of Students, or for any administrative position on campus, would be futile, and an "insult."
 
 
 11
 Under these facts we cannot find that Elloie suffered the requisite injury necessary to establish his standing to challenge Mesa's promotion policies. We recognize that an individual need not always file and perfect an application for a position to have standing to complain of employment discrimination. See Tagupa v. Board of Directors, 633 F.2d 1309, 1311 (9th Cir. 1980).[2] Here, however, Elloie never claimed any interest in any administrative position. Absent that type of claim which would establish the requisite injury, Elloie lacks standing.
 
 B. BLACK FACULTY ASSOCIATION
 
 12
 An association has standing to sue if it is itself injured by the complained of conduct. Moreover, it can have standing to represent its members if its "members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). There are no facts in the record that establish BFA's standing to challenge Mesa's hiring and promotion practices either in its own right or as a representative for its members.
 
 1. Standing to Sue in its Own Right
 
 13
 The record here does not indicate that BFA suffered or is threatened by any injury. There is no evidence of BFA's purpose or goals, of the extent of its membership, or of the duration of its existence. Absent such evidence, we cannot determine how the complained of discrimination injured BFA.
 
 
 14
 Plaintiffs argue that Chicano Police Officer's Association v. Stover, 526 F.2d 431 (10th Cir. 1975), vacated and remanded on other grounds, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976), establishes that there is standing in the instant case. This reliance is misplaced. In Stover, the plaintiffs alleged that the complained of discrimination reduced their membership, weakened their position in negotiations, and diluted the strength of the Association. These allegations were supported by "undisputed proof and reasonable and obvious inferences." Id. at 436. There is no similar proof by BFA in this trial record. Indeed, the record reflects only that BFA is an organization at Mesa that all black faculty can join, and two members of the faculty did in fact join. Because no injury to BFA is established in the record, we conclude that BFA failed to establish standing to sue in its own right.
 
 
 15
 2. Standing to Sue to Redress Members' Rights
 
 
 16
 An association has standing to sue to redress members' injuries if those members themselves suffered or are threatened with injuries that would create a justiciable case if they themselves brought suit. The record does not indicate that BFA had any members other than Elloie and Robert Michaels. As discussed above, Elloie does not have standing. For similar reasons, Michaels does not have standing.
 
 
 17
 Michaels is an instructor at Mesa College and therefore has not established that he was adversely affected by the hiring policy at Mesa. Moreover, there is no indication in the record that Michaels applied for a promotion. In fact, he testified that since he arrived at Mesa he was not aware of any promotional position for which he was qualified. He did not indicate any desire to apply for a promotional position. Because neither Elloie nor Michaels suffered or were threatened by any injury which could have given them standing in their own right, BFA cannot have associational standing to sue on their behalf.
 
 C. THE CLASS
 
 18
 Plaintiffs tell us that even if the individual claims of Elloie and BFA fail for lack of standing, we should allow the judgment to remain in effect for the certified class. Plaintiffs claim that dictum in East Texas Motor Freight System, Inc. v. Rodriquez, 431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 1898 n. 12, 52 L.Ed.2d 453 (1977), would allow such a result. We disagree.
 
 
 19
 East Texas indicates that if a class is certified properly before trial, and at trial it becomes apparent that the named plaintiffs were not appropriate class members or representatives, there is no need to dismiss the class members' claims, if certification were proper and decertification not appropriate. We do not have that type of situation here.
 
 
 20
 In the instant case, the trial was complete before the class was certified.[3] At the time of certification neither Elloie nor BFA had been shown to be qualified as class representatives or class members. This does not fit the East Texas scenario; indeed, the initial requirement of a proper pretrial certification was not satisfied here. On this record there is insufficient evidence to determine whether class certification, notwithstanding its tardiness, was proper. There is no evidence and there are no findings as to the numerosity of the class, the existence of common question, that the representatives' claims are typical, or that the named representatives will provide adequate representation. Absent any evidence in the record that would justify certification, we cannot conclude it was proper. There is simply no basis on which we can allow this judgment to remain in effect as to the class.
 
 
 21
 In order for a class action to be maintained, the Supreme Court has stated that "(a) litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." See Sosna v. Iowa, 419 U.S. 393, 402-03, 95 S.Ct. 553, 558-59, 42 L.Ed.2d 532 (1975); see also Johnson v. Duffy, 588 F.2d 740, 745 (9th Cir. 1978). In this case, neither BFA nor Elloie were members of the class when the class was certified. Thus, the judgment must be dismissed as to the class also.[4]
 
 
 22
 JUDGMENT VACATED.
 
 
 
 *
 Hon. Consuelo Bland Marshall, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The trial court found that BFA has members other than Elloie and Michaels. See Trial Court's Findings of Fact and Conclusions of Law, Findings of Fact No. 13 & 17 (CT 38). The evidence in the record before us, however, indicates that only Michaels and Elloie are members of BFA. (RT at 9, 64.) When Elloie was asked at trial to estimate the number of BFA members, he replied non-responsively: "(A)ll black people on campus who are members of the faculty are qualified to become a member of Black Faculty Association." (RT at 31.) Any allegations in the complaint inconsistent with this have been contraverted in the answer (compare C.T. 1, P 2 & 3 (complaint) with C.T. 10, P I & II (answer)) and are not entitled to any evidentiary weight. Because the trial judge's findings are contrary to the facts produced at trial, his findings are clearly erroneous
 
 
 [2]
 We note, however, that the plaintiff in Tagupa filed an application, albeit incomplete, for the desired position. That filing indicates some interest in obtaining a position, the type of interest which Elloie has not established
 
 
 [3]
 Our disposition of this case makes it unnecessary for us to express any opinion on the appropriateness or inappropriateness of the district court's certification procedure. It should be noted, however, that a pretrial certification hearing might have illuminated the standing problems, and thus avoided the expense of a trial and an appeal
 
 
 [4]
 The defendants contend that this action must be dismissed because, as public entities, they are not subject to § 1981. Our holding that the plaintiffs lack standing and are not proper representatives of the class to maintain this suit makes it unnecessary to reach this issue
 Our disposition of this case on these grounds makes it unnecessary for us to determine whether the trial judge used the proper standard (i. e., disparate impact) in finding a section 1981 violation.