Frank **WILKINSON**, etc., et al., Plaintiffs,

v.

**FEDERAL BUREAU OF INVESTIGATION**, etc., et al., Defendants.

No. CV 80–1048 AWT.

United States District Court, C.D. California.

Sept. 13, 1983.

As Corrected Sept. 16, 1983.

Fred Okrand, ACLU Foundation of Southern California, Los Angeles, Cal., Paul L. Hoffman, Robert C. Lind (of counsel), Southwestern University School of Law, Los Angeles, Cal., Douglas E. Mirell, Howard J. Unterberger, Peter N. Scolney, Karen L. Green Rosen, Nathaniel J. Weinstock, Stacey L. Arthur, David Halberstadter, Kenneth T. Zwick, Los Angeles, Cal., for plaintiffs.

Alexander H. Williams, III, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civ. Div., Stephen D. Petersen, Asst. U.S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

This is an action brought by the National Committee Against Repressive Legislation [1] ("NCARL"); its former executive director, Frank Wilkinson; and several members of NCARL. NCARL describes itself as an unincorporated association dedicated to the preservation of First Amendment rights and to the eradication of repressive laws and practices throughout the United States. The defendants are various officers and

---

1. From its inception in 1960 until approximately 1969, NCARL was known as the National Committee to Abolish the House Un-American Activities Committee. From 1969 until 1975, NCARL was known as the National Committee to Abolish HUAC/HISC (House Un-American Activities Committee/House Internal Security Committee). Since 1975, the organization has been known by its present name.

agencies of the United States. In this action, plaintiffs claim that their constitutional and other rights were violated by defendants' efforts to disrupt, discredit, and interfere with NCARL's activities.

This matter is now before the Court on plaintiffs' motion for class certification under Fed.R.Civ.P. 23(b)(3).[2] Named plaintiffs request the certification of a plaintiff class consisting of all individuals who have been sustaining members of NCARL for at least one year since 1960. The class members' claims are that their constitutional and other rights were invaded when defendants (1) disrupted and discredited NCARL's activities, and (2) obtained information about the class members' activities, including their contributions to NCARL.

The constitutional and statutory sources of plaintiffs' class claims and the relief sought for these claims are as follows:

1. Damages for violations of the First, Fourth, Fifth and Ninth Amendments and Article IV, § 2 of the Constitution;

2. Damages for unauthorized interception of wire communications in violation of 18 U.S.C. § 2510 *et seq.*, 47 U.S.C. § 605 and the First and Fourth Amendments;

3. Damages for violations of 42 U.S.C. §§ 1983 and 1985(3);

4. Injunctive, declaratory and mandamus relief for defendants' violations of plaintiffs' constitutional rights; and

5. Damages, injunctive, declaratory and mandamus relief for violations of the Privacy Act, 5 U.S.C. § 552a.

Defendants launch a two-pronged attack against plaintiffs' motion. First, they challenge plaintiffs' standing to assert claims that derive from harms inflicted upon NCARL. Second, defendants challenge plaintiffs' ability to satisfy the requirements of Rules 23(a) and 23(b)(3). A determination of whether class representatives and members have standing to raise their claims should precede determination of their class certification motion. *See O'Shea v. Littleton,* 414 U.S. 488, 494 & n. 3, 94 S.Ct. 669, 675 & n. 3, 38 L.Ed.2d 674 (1974). Accordingly, I turn first to defendants' standing challenge.

## I. STANDING

Defendants challenge plaintiffs' standing to raise only two of their claims. First, defendants contend that plaintiffs lack standing to assert any First Amendment claims. Second, defendants challenge plaintiffs' standing to raise invasion of privacy claims.

### 1. *First Amendment Claims*

In their first cause of action, plaintiffs contend that they were deprived of their rights of free speech, press, assembly, and free association, as guaranteed by the First Amendment. The kinds of actions by defendants on which plaintiffs base these claims include the following: disruption of speeches given by NCARL officials; disruption of NCARL lobbying activities; and use of government agents to cause dissension within NCARL. As explained above, plaintiffs' theory of harm and damages on these claims is that plaintiffs suffered derivative harm as a result of the alleged injuries inflicted directly upon NCARL. In particular, plaintiffs claim that the effectiveness of their contributions to NCARL was diluted by defendants' alleged activities hampering NCARL.

In *California Medical Ass'n v. Federal Election Comm'n,* 641 F.2d 619 (9th Cir. 1980) (en banc) (*"CMA"*), aff'd, 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981), the Ninth Circuit addressed the issue of how an individual's First Amendment

---

**2.** Plaintiffs also seek class certification under Fed.R.Civ.P. 23.2. However, that provision is inapplicable here. The purpose of Rule 23.2 is to give "entity treatment" to an association when for formal reasons it cannot sue or be sued as a jural entity under Rule 17(b). *See* Fed.R.Civ.P. 23.2 Advisory Committee Note.

Because NCARL already is a party in this action, Rule 23.2 is not applicable. *See Gay Lib v. University of Mo.,* 416 F.Supp. 1350, 1360 (W.D.Mo.1976), *rev'd on other grounds,* 558 F.2d 848 (8th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 789 (1978).

speech and associational rights are infringed by government actions that restrict the individual's ability to finance political speech by an organization.[3] While *CMA* involved a challenge to statutory limits on contributions to political action committees, plaintiffs seek to frame their First Amendment claim on behalf of NCARL's members in precisely the same manner. Relying on *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), *CMA* held that "speech by proxy" in the form of contributions for financing an organization's speech is "somewhat removed from the core of political expression." 641 F.2d at 628.

> [C]ontributions ... were viewed [in *Buckley*] primarily as symbolic acts showing support, rather than as expository acts of advocacy. A contribution is potential speech dependent upon the recipient for its ultimate articulation. The articulation of ideas by a speaker is more central to political expression than is the symbolic support embodied in a contribution, which is essentially a proxy.

*CMA,* 641 F.2d at 627.

Although *CMA* holds that "speech by proxy" is not at the core of the First Amendment, it does not conclude that the government is free to infringe such indirect speech without justification. Instead, because restrictions on contributions do infringe First Amendment freedoms[4] to some degree, such restrictions cannot be sustained "absent demonstration of a discernible, important, and legitimate policy of the Congress." *Id.* at 628. In the context of this action, any government activities that restricted or diluted plaintiffs' contributions to NCARL would have infringed plaintiffs' First Amendment rights and would have to have been justified by "discernible, important, and legitimate" governmental policies.

■ For the foregoing reasons, the defendants' challenge of plaintiffs' standing to base their First Amendment claim on derivative harms must be rejected.

### 2. *Invasion of Privacy Claims*

Plaintiffs seek to assert a variety of claims based upon Constitutional and statutory privacy guarantees.

■ Plaintiffs claim that the Fourth Amendment rights of all members of NCARL were violated by defendants' intrusive acts aimed directly at NCARL, its spokespersons and representatives. It is well established that no individual can assert a "derivative" Fourth Amendment violation on the basis of an intrusion of another's privacy or property.[5] "To establish that his fourth amendment rights have

---

**3.** Although the Supreme Court addressed this issue in its affirmance of the Ninth Circuit's decision in *CMA,* there was no Opinion of the Court on this issue. Justice Marshall's opinion, joined by three members of the Court, essentially adopted the Ninth Circuit's reasoning on this issue. Justice Blackmun wrote separately on this issue, concurring only in the judgment. The four dissenting members of the Court did not reach this issue. In the absence of any Opinion of the Supreme Court on this issue, I consider the Ninth Circuit's decision to be the law of this Circuit. *See Saia v. New York,* 334 U.S. 558, 568 n. 1, 68 S.Ct. 1148, 1153 n. 1, 92 L.Ed. 1574 (1948) (Jackson, J., dissenting) (no precedential value to Supreme Court decisions if no opinion of the Court); *cf. United States v. Pink,* 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796 (1942) (equally-divided affirmance by the Supreme Court is not authoritative precedent).

**4.** In *CMA,* the Ninth Circuit analyzed the contribution limits as infringements of the contributors' freedom of speech and freedom of association—seemingly without differentiation. *Id.* at 626–28. Both of these freedoms are founded in the First Amendment, *NAACP v. Alabama ex rel. Flowers,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 1170–71, 2 L.Ed.2d 1488 (1958), and plaintiffs have alleged adequately an infringement of both of these rights. At this juncture, there is no need to determine whether defendants' alleged actions resulted in one or two actionable claims.

**5.** Traditionally, this limitation has been viewed as a standing requirement. *E.g., Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). In *Rakas v. Illinois,* 439 U.S. 128, 139–40, 99 S.Ct. 421, 428–29, 58 L.Ed.2d 387 (1978), the Supreme Court explained that this limitation should be seen as an aspect of substantive Fourth Amendment law, rather than as a standing requirement. Although defendants here have presented their argument in terms of a standing requirement, as *Rakas* concedes, the outcome of the analysis is identical regardless of the label attached. *Id.*

been violated by an unlawful search, a defendant must show that he had a legitimate expectation of privacy *in the area searched."* *United States v. Nadler,* 698 F.2d 995, 998–99 (9th Cir.1983) (quoting *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)).

■ Plaintiffs urge that this restriction of Fourth Amendment protection be limited to cases where application of the exclusionary rule is at issue. There is no authority for such a limitation. In fact, the Supreme Court has held that protected "legitimate expectations of privacy" must have a source outside the Fourth Amendment—and a definition of such expectations is not limited to cases involving the exclusionary rule. *See Rakas v. Illinois,* 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430 n. 12, 58 L.Ed.2d 387 (1978). Plaintiffs lack standing to assert derivative Fourth Amendment privacy claims based on governmental intrusions on the rights of others than themselves.

■ Plaintiffs also are barred from asserting actions for derivative invasions of privacy based upon constitutional or statutory provisions other than the Fourth Amendment. By definition, the constitutional right to privacy is personal to the individual seeking to assert it. *Cf. Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (Constitution guarantees a right to "personal privacy"). Thus, a person cannot claim that his or her right to privacy is invaded by an intrusion on a third party. Similarly, the statutory source of plaintiffs' invasion of privacy claim, 5 U.S.C. § 552a, was enacted to protect the privacy rights "of *individuals identified* in information systems." Privacy Act of 1974, Pub.L. 93–579, § 2, 88 Stat. 1897 (1974) (emphasis added). Thus, I conclude that this statute protects only those persons who are wrongfully identified in government records and there is no actionable "derivative" harm claim under 5 U.S.C. § 552a.

■ For the same reasons, plaintiffs cannot base an action for damages for unauthorized interceptions of communications on derivative harms. Civil damage actions under the Title 18 provisions on which plaintiffs seek to rely are limited to "any person whose wire or oral communications is intercepted, disclosed or used in violation of this chapter." 18 U.S.C. § 2520. To the extent that a private civil remedy exists under 47 U.S.C. § 605,[6] I conclude that Fourth Amendment limitations should be applied and claims for "derivative" harms disallowed, especially because Congress included express standing limitations in the Title 18 provisions which create an express private right of action.

■ Plaintiffs also seek to assert invasion of privacy claims relying upon direct invasions of class members' Constitutional and statutory privacy interests. If plaintiffs are able to establish direct invasion of the zone of interests protected by these laws, there is no standing bar to these claims. I turn now to a discussion of the propriety of class certification for these claims.

## II. CLASS CERTIFICATION

Defendants challenge plaintiffs' ability to satisfy each of the four requirements of Fed.R.Civ.P. 23(a), and the requirements of Rule 23(b)(3). Defendants' challenges can be addressed most efficiently by first applying the requirements of Rule 23(b)(3) to each of plaintiffs' claims. The Rule 23(a) requirements will then be applied to those claims that satisfy Rule 23(b)(3).

### 1. *Rule 23(b)(3) Considerations*

Rule 23(b)(3) requires that questions of law or fact common to the members of the class predominate over individual issues and that a class action is superior to other available methods of adjudicating the controversy. Factors to be considered in making this assessment include (i) the interest of the class members in individually prosecuting the action, (ii) the extent and nature of

6. *Compare Smith v. Cincinnati Post and Times-Star,* 353 F.Supp. 1126 (S.D.Ohio) (no private right of action), *aff'd,* 475 F.2d 740 (6th Cir. 1972), *with Home Box Office, Inc. v. Pay TV of Greater N.Y., Inc.,* 467 F.Supp. 525 (S.D.N.Y. 1979) (implied private right of action exists).

related litigation commenced by class members, (iii) the desirability of concentrating the litigation in this forum, and (iv) the difficulties likely to be encountered in management of a class action.

In this action, plaintiffs are asserting a wide variety of claims arising from numerous constitutional and statutory provisions. As explained above, plaintiffs are eligible to assert claims for "derivative harm" in some of their causes of action, while they must demonstrate direct harm for other claims. Whether Rule 23(b)(3) is satisfied in this action can be determined only by analyzing individually each of the claims for which plaintiffs seek class certification. At the conclusion of this analysis, I will discuss three issues—remedies, statute of limitations, and personal jurisdiction—that have been raised by defendants as Rule 23(b)(3) considerations.

### a. *Free Speech, Free Association, and Right to Petition Claims*

■ As explained above, plaintiffs can claim that their constitutional rights to free speech, free association and to petition their elected representatives [7] were infringed when defendants took actions that limited NCARL's effectiveness. To establish this claim, plaintiffs must demonstrate that defendants hampered NCARL's effectiveness without constitutional justification. While proof of membership will be an individual issue, this issue can be resolved easily by reference to documentary evidence. The more difficult issues concern liability to the class—what actions were taken by defendants against NCARL and what justification is offered for such actions. This proof will be common to the entire class. Thus, I am satisfied that common proof substantially will outweigh individual proof of this claim.

I also conclude that a class action is the superior method of adjudicating this claim. NCARL members would have little interest in litigating this claim individually. The potential individual recoveries are, in all likelihood, too small to warrant individual actions on this claim. Absent class certification here, it is likely that class members' constitutional claims would never be asserted.

### b. *Invasion of Privacy Claims*

■ Because an invasion of privacy claim cannot be based on infringement of the rights of a third party, in order to prevail on any privacy-based claim arising from defendants' actions in the past,[8] each class member would have to show a legitimate expectation of privacy in the area or communication allegedly invaded by defendants. At least as to claims based on the Fourth Amendment, even a class member's presence in the area invaded would not necessarily establish the necessary privacy expectation. *United States v. Nadler,* 698 F.2d at 999. Similarly, as stated above, plaintiffs' statutory wiretap claims can be asserted only by the parties to each communication. Thus, as to plaintiffs' privacy claims based on the First, Fourth, and Ninth Amendments, and Titles 18 and 47 of the United States Code, I conclude that Rule 23(b)(3) is not satisfied because the individual issues would overwhelm whatever issues, if any, are common to the class.

■ I reach the same conclusion as to plaintiffs' privacy claim based on the Privacy Act, 5 U.S.C. § 552a, for which plaintiffs seek certification of a subclass. Plaintiffs allege that defendants violated the Privacy Act by the collection and dissemination of unnecessary and inaccurate information about plaintiffs' exercise of their First

---

**7.** Defendants did not specifically challenge plaintiffs' standing to bring a claim based on infringement of the right to petition their elected representatives. *See* U.S. Const. art. IV, § 2. Plaintiffs claim that this right was infringed by defendants' actions that frustrated NCARL's lobbying effectiveness. To whatever extent that this states a Constitutional claim separate from plaintiffs' claims based on the First Amendment, I conclude that plaintiffs have standing to claim derivative harm for the same reasons that support plaintiffs' standing to assert derivative First Amendment claims.

**8.** The propriety of class certification of plaintiffs' claims for prospective relief is discussed in Part II.1.e, *post.*

Amendment rights. *See* 5 U.S.C. § 552a(e)(7). Plaintiffs intend to press this claim only on behalf of a subclass of NCARL members whose names appear in documents prepared by defendants that have been discovered by plaintiffs in this action. To prove each violation of the Privacy Act, each subclass member would have to introduce the government document(s) in which his or her name appears. This conceivably could involve one or more different documents for each subclass member. Defendants then would have a right to establish a defense that each document was compiled "for the purpose of identifying individual criminal offenders," 5 U.S.C. § 552a(j)(2)(B), or for other "law enforcement purposes," 5 U.S.C. § 552a(k)(2). Plaintiffs have not demonstrated that common issues would predominate over individual issues for the proposed subclass.[9]

### c. *False Stigmatization Claims*

 Plaintiffs allege that defendants deprived the class members of their right to be free from the stigma of improper and false government characterization of their activities. Although I am doubtful that this allegation states an actionable claim,[10] the claim is appropriate for class certification. *See Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976) (inquiring into the merits of claim inappropriate on class certification motion).

Plaintiffs' false stigmatization claim is closely analogous to a group defamation claim. To prevail on a group defamation claim, a group member must prove the unprivileged publication by the defendant of a false and defamatory statement concerning the group and referring to each group member. Restatement (Second) of Torts §§ 558, 564A (1977). In the context of this action, plaintiffs intend to rely on statements made by defendants about NCARL to prove their false stigmatization claim. All of the issues necessary to establish defendants' liability—or absence of liability—can be determined without the introduction of any individual proof by any class member. Thus, even if calculation of damages would dictate a contrary result, the Rule 23(b)(3) "predominance of common issues" requirement is satisfied for this claim.[11] Additionally, I am convinced that a class action is the superior method of litigating this claim, which should be capable of easy resolution as a class claim.

### d. *Fifth Amendment and Title 42 Claims*

Plaintiffs also allege that defendants deprived them of the Fifth Amendment rights to equal protection, due process, and equal privileges and immunities. A separate claim alleges a deprivation of plaintiffs' constitutional rights in violation of 42 U.S.C. § 1983 and a conspiracy to deprive plaintiffs of their constitutional rights in violation of 42 U.S.C. § 1985(3).

Plaintiffs have not urged that these claims provide grounds for recovery that are independent of the remedies to which plaintiffs may be entitled under their substantive constitutional claims. I understand these claims to be alternative expressions of their substantive constitutional and statutory claims discussed above. For example, I understand that plaintiffs contend that defendants' deprivation of plaintiffs' First Amendment rights also was a viola-

---

**9.** Certification of this subclass must be denied for the additional reason that plaintiffs have failed to demonstrate that the subclass would satisfy the numerosity requirement of Fed.R. Civ.P. 23(a)(1), as required by Rule 23(c)(4)(B). *See Officers for Justice v. Civil Service Comm'n,* 688 F.2d 615, 630 (9th Cir.1982).

**10.** *See Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976) ("reputation" is not a liberty or property interest protected by the Fourteenth Amendment). *See also Bar-*

*ger v. Playboy Enter., Inc.,* 564 F.Supp. 1151, 1154 (N.D.Cal.1983) ("of and concerning" requirement not met when group consisted of 100–125 members); *Noral v. Hearst Publishing Co.,* 40 Cal.App.2d 348, 104 P.2d 860 (1940) (colloquium element of group defamation tort not present when statements referred to union with 162 members); Restatement (Second) of Torts § 564A (1977).

**11.** See discussion in Part II.1.e, *post.*

tion of plaintiffs' Fifth Amendment procedural rights. Similarly, plaintiffs contend that defendants violated §§ 1983 and 1985(3) by these procedural deprivations, which were effected pursuant to defendants' alleged conspiracy.

Accordingly, plaintiffs' claims pursuant to the Fifth Amendment and Title 42 are appropriate for class treatment to the same extent as the underlying substantive constitutional and statutory claims. No additional issues requiring individual proof will be required to prove the Fifth Amendment and Title 42 claims. Relying on the example used above, plaintiffs could establish a violation of § 1985(3) for the entire class by proving that defendants conspired to frustrate NCARL's First Amendment activities without justification, in deprivation of NCARL's due process rights. This proof would be closely related to proof of the underlying constitutional tort. Any additional proof necessary to the § 1985(3) claim—to establish liability or a defense—would be common to the class.

■ I conclude that plaintiffs' claims under the Fifth Amendment and Title 42 are eligible for class treatment under Rule 23(b)(3) to the extent that these claims arise from other constitutional or statutory violations that I have found to be eligible for class treatment.

#### e. *Remedies*

■ Pursuant to the foregoing analysis, plaintiffs have satisfied the Rule 23(b)(3) "predominance of common issues" requirement for the purpose of establishing defendants' liability on plaintiffs' free speech, free assembly, right to petition, and false stigmatization claims, as well as for the Fifth Amendment and Title 42 causes of action arising from these claims. Defendants contend that the difficulty of establishing damages for these claims should pre-

clude class certification of the claims. I reject this contention.

The measure of damages in constitutional damage actions is a difficult, unsettled issue that I do not attempt to decide at this time.[12] Regardless of the measure of damages to be applied, however, in this case the measure may have equal applicability across the class. Each class member's damages would be measured by the derivative harm suffered by that class member as a result of harm inflicted directly upon NCARL. Thus, one would expect uniformity of damages or use of a uniform method to measure individual damage claims. Moreover, even a need for individual proof of damages would not preclude class certification. "The amount of damages is invariably an individual question and does not defeat class treatment." *Blackie v. Barrack,* 524 F.2d at 905. Should it become necessary, the management provisions of Fed.R.Civ.P. 23(c)(1) and (4)(A) can be invoked to enable efficient, individual computation of plaintiffs' damages after trial of the class issues. *See Arthur Young & Co. v. United States Dist. Court,* 549 F.2d 686, 696–97 (9th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977).

■ Plaintiffs also seek class certification for the purposes of the prospective, equitable relief sought for each of their claims. Class certification conceivably could be ordered for injunctive relief even as to claims that plaintiffs, because of standing limitations, clearly could not litigate as a class to seek damages. *E.g., Horton v. Goose Creek Ind. School Dist.,* 690 F.2d 470, *reh. denied,* 693 F.2d 524 (5th Cir.1982) (class of high school students certified to seek injunction prohibiting locker searches by school officials). Nevertheless, I conclude that class certification is not the "superior method" of litigating plaintiffs' claims for injunctive relief.

---

**12.** *Compare Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (plaintiffs limited to compensation for "actual injury" in § 1983 procedural due process actions) *with Halperin v. Kissinger,* 606 F.2d 1192, 1207–08 & n. 100 (D.C.Cir.1979) (*Carey* limit not applicable to action for violation of Fourth Amendment rights), *aff'd mem.,* 453 U.S. 928, 102 S.Ct. 892, 69 L.Ed.2d 1024 (1980) (equally-divided court). For a discussion of this issue, see Note, *Damage Awards for Constitutional Torts,* 93 Harv.L.Rev. 966 (1980).

Under *Black Faculty Ass'n v. San Diego Community College,* 664 F.2d 1153 (9th Cir. 1981), it is clear that NCARL itself has standing to seek injunctive relief to prohibit future violations of the rights of NCARL's members. "An association has standing to sue to redress members' injuries if those members themselves suffered or are threatened with injuries that would create a justiciable suit if they themselves brought suit." *Id.* at 1156–57. There does not appear to be any beneficial impact on this action from allowing the class to sue on its own behalf for injunctive relief. The only impact would be the needless multiplication and complication of the proceedings.[13] NCARL can adequately represent the interests of its members on the equitable claims and I am confident that NCARL will vigorously and effectively assert these interests in seeking injunctive relief without the necessity of certifying a 23(b)(3) class for this purpose.

### f. Statute of Limitations and Personal Jurisdiction

Defendants also contend that the Rule 23(b)(3) "predominance of common issues" requirement cannot be satisfied for any of plaintiffs' claims because proof of avoidance of the statute of limitations and the propriety of personal jurisdiction over individual defendants will be an individual issue for each class member. When considered in light of the foregoing discussion of plaintiffs' claims, defendants' contention is meritless.

I have concluded that plaintiffs satisfy Rule 23(b)(3) only for certain claims derivative of harms allegedly inflicted upon NCARL by defendants. I have ruled on earlier motions that NCARL made an adequate factual showing to justify personal jurisdiction over certain of the individual defendants named in NCARL's claims. Because the class members' claims are derivative of the NCARL claims, these same facts justify personal jurisdiction over the individual defendants for the purpose of the class members' claims. Similarly, I have ruled previously that NCARL has made a sufficient factual showing to justify tolling the statute of limitations so that its claims are not, at this stage, extinguished. This ruling also applies to class members' claims, because defendants have not suggested any different considerations that would apply to individual class members' notice of their claims that are different from the notice considerations which apply to NCARL.

### 2. Rule 23(a) Considerations

#### a. Rule 23(a)(1)

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. Plaintiffs allege that the proposed class contains more than 300 persons. Plaintiffs' allegations must be accepted as truthful for the purpose of this motion. *Blackie,* 524 F.2d at 901 n. 17. On the basis of numbers alone, 300 class members undoubtedly is sufficient to satisfy the Rule 23(a)(1) numerosity requirement. *See Jordan v. County of Los Angeles,* 669 F.2d 1311 & n. 10 (9th Cir.1982) (thirty-nine members probably sufficient to satisfy the numerosity requirement), *vacated and remanded on other grounds,* —— U.S. ——, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).[13a] Moreover, such factors as the geographical diversity of the class members and the relatively small size of each class member's claim support a finding that Rule 23(a)(1) is satisfied here. *Id.*

---

**13.** Plaintiffs have not sought class certification pursuant to Fed.R.Civ.P. 23(b)(2), so I need not decide whether class treatment of the injunctive claims would be appropriate under that provision.

**13a.** It is apparent from the Supreme Court's remand that it was based on grounds other than those relied on here. The case was remanded "for further consideration in light of *General Telephone Co. of Southwest v. Falcon,*

457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)." 103 S.Ct. at 35. As both *Falcon* and the Ninth Circuit's opinion on remand make clear, the ground of vacation and remand was that, "At the heart of the *Falcon* decision was the Supreme Court's rejection of the 'across-the-board' rule," which was also relied on in *Jordan,* 669 F.2d at 1322. *Jordan v. County of Los Angeles,* 713 F.2d 503 (9th Cir.1983). See also footnote 3, *ante.*

### b. *Rule 23(a)(2)*

Rule 23(a)(2) allows class certification only when there are questions of law or fact common to the class. In this Circuit, this commonality requirement is satisfied "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Jordan,* 669 F.2d at 1320. In this action, all of the class-eligible claims depend on whether defendants unjustifiably violated the constitutional and statutory rights of the class members. No individual questions will arise, at least in the liability phase of the trial, because the violation of the individual class member's rights can be determined by reference to defendants' actions towards NCARL. In this situation, Rule 23(a)(2) is satisfied easily.

### c. *Rule 23(a)(3)*

Rule 23(a)(3) requires that the claims or defenses of the named representatives be typical of those of the class. The named representatives here are four individuals, each of whom has been a sustaining member of NCARL for over 15 years. Their combined membership totals 80 years of involvement in NCARL's work.

A named plaintiff's claim is typical if it "stems from the same event, practice, or course of conduct that forms the basis of the class claims and is based upon the same legal or remedial theory." *Jordan,* 669 F.2d at 1321. In this action, the class claims arise from the injuries inflicted upon NCARL members as a result of actions taken against NCARL. Because the named representatives were NCARL members during the class period, the representatives' claims are identical to those of the class and Rule 23(a)(3) is satisfied. *General Tel. Co.*

*v. Falcon,* 457 U.S. 147, 155–56, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982).

### d. *Rule 23(a)(4)*

Under Rule 23(a)(4), the named representative must "fairly and adequately protect the interests of the class." This requires "that the named representative's attorney be qualified, experienced, and generally capable to conduct the litigation,[14] and that the named representative's interests not be antagonistic to the interests of the class." *Jordan,* 669 F.2d at 1323.

Defendants contend that the interests of the named representatives are antagonistic to those of the class members for three reasons. First, defendants argue that class membership will necessitate revelation of the identities of NCARL members to defendants, which may be at odds with the members' interest in confidentiality. Defendants assume, however, that it will be necessary to reveal the identities to conduct this litigation.[15] It may be that disclosure is unnecessary, or that plaintiffs will be required to submit the membership lists under seal and subject to a protective order. Additionally, the possibility of disclosure could be explained to class members in the notice that is required for classes certified under Rule 23(b)(3), *see* Fed.R.Civ.P. 23(c)(2), which would give class members an opportunity to exclude themselves from the class, *id.* Moreover, this issue would arise regardless of who the class representatives are. At this stage of the proceedings, I am not convinced that that possibility of membership disclosure is a bar to class certification.

Second, defendants contend that the named plaintiffs are taking positions contrary to the interests of the class by refusing to comply with discovery requests,

---

**14.** Defendants have not challenged the qualifications of the attorneys who seek to represent the class. Plaintiffs' lead counsel is associated with the American Civil Liberties Union of Southern California, which has extensive background and resources in constitutional and class action litigation. Throughout the lengthy pretrial proceedings in this action, plaintiffs' counsel "have shown themselves willing to undertake the considerable commitment of time, energy, and money necessary for the vigorous prosecution of the claims here asserted." *In re Agent Orange Prod. Liab. Litigation,* 506 F.Supp. 762, 788 (E.D.N.Y.1980).

**15.** Plaintiffs have proposed submitting NCARL membership lists only for *in camera* review by the Court.

which could result in a dismissal of plaintiffs' claims.[16] It is not clear, however, that any of the limited class claims are threatened by the non-compliance of some individual plaintiffs who are asserting non-class claims. Additionally, should there eventually be a ruling that the class claims are threatened by failure to comply with discovery, I expect that the named representatives will assess the alternative dangers of discovery and dismissal in the same manner as would the class members. There is nothing in the record that suggests that the named representatives will act in a manner that is antagonistic to the interests of the class.[17] A merely speculative possibility of inadequate representation is not a sufficient basis to find that Rule 23(a)(4) is not satisfied. *See Morgan v. Laborers Pension Trust Fund,* 81 F.R.D. 669, 680 (N.D.Cal. 1979); 7 Wright & Miller, *Federal Practice and Procedure* § 1768 at 648–49 (1972).

■ Finally, defendants contend that the named representatives have interests antagonistic to the class members because the named representatives have sought relief in other litigation that is inconsistent with the relief in this action. NCARL and Wilkinson are plaintiffs in an action against some of the defendants in this action in an action in the District of Columbia.[18] It appears, however, that none of the named class representatives in this action is a party to the D.C. action. Moreover, contrary to defendants' contention, the relief sought by plaintiffs in this action is consistent with that sought in the D.C. action. In both, plaintiffs are seeking to obtain copies of investigative documents prepared by the government. Neither action seeks destruction of the documents as a remedy.

16. In response to some of defendants' discovery requests, plaintiffs have taken the position that constitutional privacy rights protect plaintiffs from disclosing the requested information to defendants. These discovery disputes have not yet been brought before the Court for resolution.

17. Nothing in the record suggests that, were named representatives to refuse ordered discovery, they would be acting any differently than any other representative that could be

## III. ORDER

For the foregoing reasons, it is ORDERED:

1. Pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3), a plaintiff class is certified consisting of all individuals who have been sustaining members of NCARL for at least one year since 1960 to the present. The class is certified only for the purpose of adjudication of plaintiffs' claims for damages arising from infringement of their right to free speech, right to free association, right to petition their elected representatives, and right to be free from false stigmatization. This includes claims under the Fifth Amendment and Title 42 that rely on infringement of these substantive constitutional rights. In all other respects, plaintiffs' motion for class certification is DENIED.

2. Named plaintiffs John Randolph, Sara Cunningham, Michael Shulman, and Sarah Shulman are hereby certified as representatives of the class.

3. Pursuant to Fed.R.Civ.P. 23(c)(1) and (3), this Order is subject to being altered or amended before decision on the merits and the judgment in this action shall describe the then-members of the class.

4. The named representatives are directed to confer with defendants and submit a stipulation on the proposed form and method of notice to the class. If no such stipulation can be agreed to, plaintiffs shall proceed by regularly noticed motion, pursuant to Fed.R.Civ.P. 23(c)(2), within 30 days.

certified, *i.e.,* all other members of the class. Plaintiffs' refusal to disclose certain information is based on their long-standing understanding of constitutional principles. *See Wilkinson v. United States,* 365 U.S. 399, 81 S.Ct. 567, 5 L.Ed.2d 633 (1961).

18. *See Amer. Friends Serv. Comm. v. Webster,* No. 79–1655 (D.D.C., filed June 26, 1979), *reported at,* 485 F.Supp. 222 (1980).