## PETTIGREW *v.* UNITED STATES.

1. An action by the United States, to recover the proceeds arising from sales of tobacco, which, found in the hands of the defendant, a bailee, was seized as forfeited for the non-payment of the tax due thereon, and then left with him, under an agreement with the collector of internal revenue that he, the bailee, should sell it and hold the proceeds, subject to the decision of the proper court, is, within the meaning of sect. 699 of the Revised Statutes, an action to enforce a revenue law, and this court has jurisdiction to re-examine the judgment, without regard to the amount involved.

2. The defendant having set up in his plea that, while he held such proceeds, pursuant to the agreement, a suit to recover them, defended by A., the owner of the tobacco, was dismissed by the United States after plea filed, and that the defendant, after retaining them for nearly four years, and no other suit having been brought, paid them to A., the court, although testimony was offered sustaining his plea, instructed the jury that he was liable. *Held*, that the instruction was erroneous.

ERROR to the Circuit Court of the United States for the Western District of Tennessee.

The facts are stated in the opinion of the court.

*Mr. W. Y. C. Humes* for the plaintiff in error.
*Mr. Assistant-Attorney-General Smith, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The judgment in this case is for $1,354.35, and a question is

raised as to the jurisdiction of this court, because it does not exceed $2,000.

If it is an action to enforce a revenue law of the United States, we have jurisdiction without regard to amount. Rev. Stat., sect. 699. If it is not such an action, we have not.

The counts in the original complaint are very clearly counts on a contract of bailment and for money had and received. But a demurrer to the declaration was sustained, and the case was tried on an amended declaration.

The amended declaration sets forth the seizure, while in possession of the defendants, of ninety caddies of tobacco as forfeited to the United States, on account of false and fraudulent stamps and inspection marks found there by Rolf S. Sanders, a collector of internal revenue; that said Sanders and defendants having entered into an unlawful and unauthorized agreement that defendants should sell the tobacco and hold the proceeds of the sale subject to the decision of the proper court, in proceedings to be instituted therein for the condemnation of the tobacco, said agreement was void; by reason whereof the defendants became liable to the United States for the value of the tobacco, which they have refused to pay. This is repeated in the second count, and the third is for money had and received. The substance of this is, that the tobacco being forfeited for a violation of the revenue law, and a seizure made, and the goods left with the defendants, the contemporaneous agreement is void, and the defendants are proceeded against *in personam* for the value of the goods so left with them, which cannot now be found. It would be a very narrow and technical definition of the phrase "enforcement of any revenue law" which did not recognize this action as one brought for that purpose. If there had been no revenue law which made this tobacco liable to seizure, the complaint would be bad on demurrer. The foundation of the action is the right which the revenue law vests in the United States to this property, and it is the enforcement of this right that is sought in this action. This was clearly the view which the court took of the matter, and in that view of it instructed the jury as follows: —

"That if they believed the tobacco caddies had upon them

counterfeit stamps or brands, that such fact forfeited it to the government.

"And if the proper officer seized it as forfeited, and the defendants sold the same by direction of the officer seizing it, and received the money, and had not paid it, or any part thereof, to the government, they remained liable for the amount so received by them, and they should find a verdict for the plaintiffs."

The judge evidently understood that he was enforcing the revenue law against a person unlawfully dealing with property which had been found in his possession forfeited to the government by reason of a violation of that law. We think this court has jurisdiction, under the section of the Revised Statutes cited.

The third plea of the defendants sets out the facts that, up to the time the goods were seized, they held them on sale for commission for Glazier, Luko, & Co., of St. Louis, and knew nothing of the causes of the alleged seizure; that at the request of Sanders, the officer who made the seizure, they consented to sell the goods, and hold the proceeds subject to proceedings in court to condemn them; that defendants were directed by Sanders to sell the tobacco, because it would become worthless if detained until the end of the suit; that they did sell the tobacco, and while the proceeds were in their hands a suit was commenced against them for the money, which was defended by Glazier, Luko, & Co., and dismissed by the district attorney after plea filed; that after retaining the money for nearly four years, and no other suit being brought for the money, or other proceedings against the tobacco, or any demand of them, they paid over the money to the parties from whom they had received the tobacco. To this plea a demurrer was filed and overruled, and issue was taken on it. The bill of exceptions shows that testimony was offered tending to sustain every allegation of the plea; but by giving the instruction copied above, the court, in effect, held that, if the jury believed the plea to be sustained by the evidence, it was no defence.

In this we think the court erred.

The defendants were bailees of Glazier, Luko, & Co. when the officer made the seizure. They were not charged with any offence against the revenue laws, and they were in no danger

of loss, since they did not own the tobacco. It was a matter of indifference to them, in a pecuniary sense, what the officer did with the tobacco. It was his own convenience, therefore, and the interest of the government, that induced them to take charge of it, and sell it to prevent loss; and they did so, holding the proceeds subject to judicial proceedings, to be instituted to determine the right of the government to those proceeds. We see nothing in this to condemn. The agreement made was the best that could have been made, both for the government and the owner of the goods, and was one in which the defendants were to remain bailees under the changed condition of affairs.

Undoubtedly, the officer could have required them, as a condition of leaving the property where he found it, to pay the money it sold for to him, or into the treasury, or into the registry of the court. But he did not. And we see no reason to hold that it was not competent for the defendants to retain the property on the terms which he proposed. If he had required them to sell it as property of the United States, and pay them the proceeds, they might have relieved themselves of all trouble by refusing. The officer may not have performed his duty. It was probably his duty when he made seizure of the property to deliver it to some other officer of the government, and have it libelled at once, and a warrant of seizure issued. But this neglect of his duty did not make void the promise of the defendants to take suitable care of the property, and hold it ready for such order as the court which might take jurisdiction of the proceeding should make.

If the contract of defendants was obligatory on them, as we think it was, the evidence shows that they did all that it required of them. They sold the property, and held the money until a suit was instituted against them for it. The right to the money could as well have been decided in that suit as in this; but after the owners of the tobacco had taken the defence of the suit on themselves, and filed a plea, the suit was dismissed by the attorney for the United States. The defendants still held the money for nearly four years, awaiting any further legal proceedings, or any order from Sanders or from the government. In the absence of any thing of the kind, they felt it to be their duty to pay the money to the parties from whom

they had received the tobacco.    And we think they were right. They took the goods as bailees, to hold subject to a proceeding for condemnation.    Such a suit, in effect, was commenced and dismissed.    They were only bound to hold after this for a reasonable time; and when that was passed, their duty under the agreement was ended, and their obligation to Glazier, Luko, & Co. revived.

This is the honest and fair view of the subject, and we think it conflicts with no rule of law.

The instructions of the judge were in conflict with this view, and the judgment must, therefore, be reversed, and a new trial granted; and it is

*So ordered.*