# Admissibility of Alien Amnesty Application Information in Prosecutions of Third Parties

The confidentiality provisions of the Immigration Reform and Control Act of 1986 generally bar federal prosecutors from introducing information from alien amnesty applications as evidence in criminal prosecutions of third parties, but the use of such information is not barred in prosecutions of third parties for crimes that facilitate, or are closely related to, the filing of a false amnesty application.

Justice Department use of amnesty application information is also subject to regulations issued by the Immigration and Naturalization Service. Those regulations limit such use against third parties to the prosecution of persons who have "created or supplied a false writing or document for use" in an amnesty application, which may include persons who take bribes to approve false amnesty applications

December 22, 1993

MEMORANDUM OPINION FOR THE INSPECTOR GENERAL
DEPARTMENT OF JUSTICE

This memorandum responds to your request for our legal opinion on whether the confidentiality provisions of 8 U.S.C. § 1255a(c)(5) bar Justice Department prosecutors from introducing evidence consisting of information submitted as part of an illegal alien's application for amnesty in a criminal prosecution of a third party ("(c)(5) information"). We conclude that (1) the introduction of such evidence is generally barred under the plain language of the statute but (2) it is not barred by the statute in the prosecution of third parties for crimes (e.g., the acceptance of a bribe by a government official for approving a false amnesty application) that facilitate or are closely related to the false amnesty application violations covered by 8 U.S.C. § 1255a(c)(6). It should also be noted that a defendant who is not himself the alien whose amnesty application file is used in violation of the statute would not likely have standing to move for suppression of (c)(5) information.

However, Justice Department use of amnesty application information is also subject to a specific regulation promulgated by the Immigration and Naturalization Service ("INS"), and that regulation limits use against third parties to the prosecution of persons who have "created or supplied a false writing or document for use in [an amnesty application]." 8 C.F.R. § 245a.2(t)(3), (4) (1993). We believe that language would generally allow use of (c)(5) information to prosecute INS employees who take bribes to approve false amnesty applications, based on the reasoning that such an employee participates in the creation of falsified documents used in an amnesty application.

172

## I. BACKGROUND

The Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 ("IRCA"), established procedures whereby certain illegal aliens could apply for amnesty to remain in the United States and have their status adjusted to that of temporary resident alien. 8 U.S.C. § 1255a. In order to alleviate the concerns of illegal aliens that information disclosed in their applications would be used as a basis to prosecute or deport them, IRCA included a confidentiality provision strictly limiting the Justice Department's access to and use of information submitted in alien amnesty applications. 8 U.S.C. § 1255a(c)(5). That provision's prohibition against the Justice Department's use of amnesty application information contains several exceptions. For purposes of this opinion, the relevant exception allows Department officials to use such information "for enforcement of paragraph (6)," which is a reference to 8 U.S.C. § 1255a(c)(6) ("paragraph (6)"). Paragraph (6) provides criminal penalties for filing false or fraudulent amnesty applications, as follows:

> Whoever files an application for adjustment of status under this section and knowingly and willfully falsifies, misrepresents, conceals, or covers up a material fact or makes any false, fictitious, or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be fined in accordance with Title 18, or imprisoned not more than five years, or both.

Although the paragraph (6) exception from IRCA's confidentiality restriction clearly allows amnesty application information to be used in cases brought under paragraph (6) itself against aliens who file false applications, the permissibility of using such information in prosecuting *third parties* (e.g., an INS employee or broker who facilitates a falsified amnesty application) under *other* federal statutes (e.g., bribery or fraud statutes, or the aiding and abetting statute) presents a more difficult question. As you note in your request for our opinion, the answer to that question will affect the ability of the Inspector General's Office to investigate INS employees who accept bribes for approving false legalization applications or middlemen who knowingly facilitate them.

## II. ANALYSIS

### 1. *Textual Interpretation*

Since the question presented here is primarily a matter of statutory interpretation, the Supreme Court's statement in *United States v. Ron Pair Enterprises*, 489 U.S. 235, 242 (1989) sets the framework for analysis:

The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982). In such cases, the intention of the drafters, rather than the strict language, controls. *Ibid.*

*Accord INS v. Cardozo-Fonseca*, 480 U.S. 421, 432 n. 12 (1987) ("plain language" is generally dispositive and resort to legislative history is warranted only to determine if "there is 'clearly expressed legislative intention' contrary to that language").

IRCA's restriction on the Justice Department's use of information submitted in an illegal alien amnesty application is set forth in 8 U.S.C. § 1255a(c)(5) ("subsection (c)(5)"), which provides in pertinent part:

> Neither the Attorney General, nor any other official or employee of the Department of Justice, or bureau or agency thereof, may —
>
> (A) use the information furnished pursuant to an application filed under this section for any purpose other than to make a determination on the application or *for enforcement of paragraph (6)* or for the preparation of reports to Congress under section 404 of the Immigration Reform and Control Act of 1986.[1]

(Emphasis added.)

The language of the confidentiality provision is relatively straightforward, establishing a flat prohibition against the use of application information by Justice Department personnel except in cases covered by the enumerated exceptions. However, as we discuss below in Part II.4, one federal appellate decision has loosely interpreted the statute to permit disclosure of the application information for general law enforcement purposes that clearly do not fall within the paragraph (6) exception.[2] We do not believe that the opinion in question can be reconciled with the plain language of the statute under the principles of statutory interpretation established by the above-noted line of Supreme Court cases.

---

[1] The section goes on to prohibit the Department and its officials from "mak[ing] any publication whereby the information furnished . can be identified" and from permitting anyone other than the designated officials "to examine individual applications " 8 U.S.C. § 1255a(c)(5)(B), (C) Violations of the confidentiality restrictions are made punishable by fines "in accordance with Title 18" or imprisonment of not more than five years, or both *Id* § 1255a(c)(5).

[2] *United States v Hernandez*, 913 F 2d 1506, 1512 (10th Cir 1990), *cert. denied*, 499 U S. 908 (1991) (holding that IRCA's confidentiality restrictions "only prohibit disclosures which aid in the deportation of illegal aliens").

Specifically, subsection (c)(5) unambiguously prohibits the use of amnesty application information in a criminal prosecution brought by Justice Department attorneys unless that prosecution falls within the single exception provided by the statute for law enforcement purposes — "enforcement of paragraph (6)." The inclusion of this discrete exception indicates that Congress specifically contemplated the need to allow the Department's use of amnesty application information in the law enforcement context and chose to permit such use only for the enforcement purposes specified in the text — i.e., enforcement of the false application provision. In this regard, the paragraph (6) exception falls squarely within the canon of statutory construction, "inclusio unius est exclusio alterius." *See, e.g., TVA v. Hill*, 437 U.S. 153, 188 (1978) (canon applied to reject claim that enumerated exceptions to Endangered Species Act provisions were not exclusive). The inclusion of this specific exception, together with the failure to include a broader exception for general law enforcement uses, removes any textual ambiguity from subsection (c)(5) as to whether "enforcement of paragraph (6)" provides the sole basis for disclosures of (c)(5) material in the law enforcement context.

## 2. *Legislative History*

Although the plain language of the provision would bar Department of Justice officials from disclosing (c)(5) information in matters not covered by the paragraph (6) exception, a more permissive interpretation might be justified if IRCA's confidentiality provision presented the "rare case" in which the plain meaning of the text produces a result demonstrably at odds with the legislative intent. *See Griffin*, 458 U.S. at 571. However, IRCA's legislative history does not reveal a legislative intent that is incompatible with a "plain meaning" interpretation of subsection (c)(5).

The Senate version of IRCA was passed in lieu of the House bill after the Senate language was amended to incorporate much of the text of the House bill. Consequently, the Report of the House Judiciary Committee has been viewed as the primary source of legislative history on IRCA. *See* H.R. Rep. No. 99-682, pt. 1 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5649 ("House Report").

The House Report provides little specific guidance on the confidentiality provisions of 8 U.S.C. § 1255a(c)(5). Its most pertinent and prominent passage in that regard[3] followed a discussion of the bill's provision authorizing certain designated intermediary organizations to receive amnesty applications and forward them for processing when authorized to do so by the applicant. The Report then states:

> The files and records kept by the organizations are confidential, and
> not accessible to the Attorney General or any other governmental

---

[3] The referenced passage from the House Report has been the single passage of IRCA s legislative history cited in each of the opinions we have identified discussing the confidentiality provision *See United States v Hernandez*. 913 F 2d at 1512, *id.* at 1514-15 (McKay, J , dissenting), *Zambrano v INS*, 972 F 2d 1122, 1125 (9th Cir. 1992), *vacated*, 509 U.S. 918 (1993).

> entity. The applicant must consent to the application being for-
> warded for official processing. The confidentiality of the records is
> meant to assure applicants that the legalization process is serious,
> and not a ruse to invite undocumented aliens to come forward only
> to be snared by the INS.

*Id.* at 73, *reprinted in* 1986 U.S.C.C.A.N. at 5677.

The Report's subsequent summary of the confidentiality provision in the sec-
tion-by-section analysis is even less instructive, stating, "[new Section 245A(c)]
[p]rovides for the confidential treatment of records and files relating to . . .
[amnesty] application[s] and establishes a penalty for permitting unlawful access to
such information. Establishes a criminal penalty for fraudulent application." *Id.* at
95, *reprinted in* 1986 U.S.C.C.A.N. at 5699.

After the Conference Committee produced a compromise bill generally adopt-
ing the House version, a "Summary of Conference Compromise" that was submit-
ted just before the House vote on the Conference Report described the (c)(5)
confidentiality provision as follows: "Ensures confidentiality of records by pro-
hibiting use of information contained in an application for any purpose other than
determining the merits of the applications or whether fraud is involved." 132
Cong. Rec. 31,632 (1986).

In sum, we find nothing in the House Report or other pertinent legislative his-
tory demonstrating a congressional intent "demonstrably at odds," *see Ron Pair
Enterprises,* 489 U.S. at 242, with the plain meaning of 8 U.S.C. § 1255a(c)(5).
IRCA's legislative history shows that Congress was preoccupied with the broader
provisions of the bill, such as employer sanctions and the question of whether alien
amnesty should be authorized at all. If anything, the most pertinent portion of the
legislative history shows that Congress intended the confidentiality provision to
provide a strong assurance to illegal aliens that their amnesty applications would
not be used against *them.* An interpretation of the statute that does not permit use
of application information for all general law enforcement purposes can hardly be
viewed as inconsistent with that intent.

### 3. *"Enforcement of Paragraph (6)"*

Although it is clear that IRCA does not allow Justice Department personnel to
use amnesty application information for law enforcement purposes other than
"enforcement of paragraph (6)," determining the intended scope of that exception
presents a more difficult question. The question presented is whether
"enforcement of paragraph (6)" should be limited solely to actual prosecutions
brought under *that statutory provision alone,* or whether it can be more broadly
interpreted to include investigations and prosecutions of other crimes that are sub-
stantially related to, or serve to facilitate, the false application violations covered

by paragraph (6). We believe that the broader interpretation more accurately reflects the meaning of the phrase "enforcement of paragraph (6)" and the overall scheme of the statute.

The concept of "enforcement" is a broad one, and a given statute may be "enforced" by means other than criminal prosecutions brought directly under it. *See* 2 Kenneth C. Davis, *Administrative Law Treatise* § 9:1 at 217 (2d ed. 1979); *SEC v. Pacific Bell*, 704 F. Supp. 11. 14 (D.D.C. 1989) (SEC is the "law enforcement agency" with respect to federal securities laws although it lacks the power to prosecute criminal violations of those laws); *Black's Law Dictionary* 528 (6th ed. 1990) (defining "enforcement" as "the carrying out of a mandate or command"). *Pettigrew v. United States*, 97 U.S. 385 (1878), for example, concerned an action brought by the government to recover the proceeds from the defendants' sale of tobacco that had been seized under the federal revenue laws and deposited with them. Under then-existing jurisdictional statutes, the Supreme Court would have lacked jurisdiction over the defendants' writ of error unless the action being appealed was one brought to "enforce a revenue law of the United States." *Id.* at 386. The Court's jurisdiction was therefore challenged on the grounds that, although the underlying seizure was pursuant to a revenue statute, the actual case was an action to enforce a common law bailment. The Court sustained its jurisdiction, however, reasoning that the purpose of the action was to enforce "the right which the revenue law vests in the United States to this property." *Id.* The Court concluded that "[i]t would be a very narrow and technical definition of the phrase 'enforcement of any revenue law' which did not recognize this action as one brought for that purpose." *Id.*

We believe that it would be "very narrow" as well as overly-technical to construe the expression "enforcement of paragraph (6)" to encompass only the prosecution of cases under the provisions of paragraph (6) itself. A more reasonable interpretation of the expression recognizes that the government enforces the mandate of paragraph (6) — the prevention and punishment of falsified or fraudulent amnesty applications — through other law enforcement activities as well.[4] This mandate may be "enforced" by a variety of enforcement activities, including the investigation and prosecution of other federal crimes when they involve amnesty application fraud: aiding and abetting such false applications, 18 U.S.C. § 2; making or accepting bribes to facilitate the success of false applications, 18 U.S.C. § 201; and mail fraud, 18 U.S.C. § 1341; wire fraud, 18 U.S.C. § 1343, or false statement to government officials, 18 U.S.C. § 1001, that facilitate or are closely associated with paragraph (6) violations.

---

[4] A contrary conclusion might be warranted if, for example, the exception to the confidentiality requirement in § 1255a(c)(5)(A) permitted the use of application information only "for the prosecution of violations of paragraph (6)" — language that would explicitly indicate a congressional intent to limit the exception to those cases specifically brought under paragraph (6) itself

If the more restrictive interpretation were adopted, Department officials could not use such covered information for a wide-ranging investigation or prosecution of fraudulent amnesty application schemes if they were not planning a prosecution to be brought specifically under 8 U.S.C. § 1255a(c)(6). For example, the investigation of a false amnesty application scheme might have produced evidence sufficient to prosecute an INS employee or broker who took or conveyed bribes on behalf of an illegal alien under circumstances where, for one reason or another, a paragraph (6) prosecution *of the alien himself* is unworkable (e.g., he is outside U.S. jurisdiction, deceased, or simply did not understand that he was filing false information). Even though the resultant prosecution of the employee or broker would not include a charge based on paragraph (6) as such, it would exalt form over substance to assert that such a prosecution did not contribute to the "enforcement of paragraph (6)."

We think instead that Congress intended the "enforcement of paragraph (6)" proviso to allow the use of the covered information in any investigation or prosecution aimed at criminal violations that facilitate or are significantly related to false amnesty application filings.[5] Paragraph (6)'s broad prohibition of false amnesty application filings itself evidences this intent; the prohibition cannot be fully enforced unless those who facilitate the false filings can be prosecuted under other statutes with the best available evidence.

In this regard, we doubt that a false application "facilitator" would have standing to move for suppression of evidence consisting of information from the alien amnesty application of another person. Unlike the federal wiretap statute, for example, 18 U.S.C. § 2518(10)(a)(iii), IRCA's confidentiality provision does not authorize "aggrieved persons" to move for suppression of evidence based on the improper use of (c)(5) information. Under those circumstances, the same principles that limit standing to assert Fourth Amendment rights in a motion to suppress should apply to the assertion of statutory rights such as those established by IRCA's confidentiality provision. *See, e.g., Rakas v. Illinois*, 439 U.S. 128, 133-38 (1978); *Alderman v. United States*, 394 U.S. 165, 171-72 (1969) ("suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence").

*Alderman*'s requirements for Fourth Amendment standing have been held applicable to motions to suppress evidence based upon statutory rights as well. *United States v. Gallo*, 863 F.2d 185, 192 (2d Cir. 1988), *cert. denied*, 489 U.S. 1083 (1989). Similarly, in *Wilkinson v. FBI*, 99 F.R.D. 148 (C.D. Cal. 1983), the court

---

[5] This conclusion is not contrary to the advice contained in the letter sent by this Office to the U S. Attorney for the Southern District of New York referred to in your request for this opinion Letter for Mary Jo White, U S. Attorney, Southern District of New York, from Richard L. Shiffrin, Deputy Assistant Attorney General, Office of Legal Counsel at 2 (Aug 12, 1993) That letter observed that the U S Attorney's intention to redact information reflecting (c)(5) information from documents to be introduced in the trial in question was "reasonable " The letter did not purport to offer an opinion that such redaction was legally required

held that a person who was not himself identified in certain government records did not have standing to assert a Privacy Act violation based on unauthorized disclosure of those records. As the court stated: "This statute protects only those persons who are wrongfully identified in government records and there is no actionable 'derivative' harm claimed under 5 U.S.C. § 552a." *Id.* at 154. In light of these precedents, it is doubtful that defendants other than the actual aliens whose amnesty applications are used in violation of the IRCA's confidentiality provision would have standing to move for suppression of evidence introduced in violation of that provision.

### 4. *Judicial Opinions*

Although we have concluded that 8 U.S.C. § 1255a(c)(5) would permit the use of application information in prosecutions of crimes significantly related to false application violations, we note that the Tenth Circuit's opinion in *United States v. Hernandez, see supra* note 2, would permit even wider use of such information. Based on the principles of statutory interpretation discussed above, we do not find that opinion persuasive and would not recommend that Department prosecutors look to it as a sound guide for the use of (c)(5) information.

In *Hernandez*, a divided Tenth Circuit panel held that subsection (c)(5) did not bar Justice Department prosecutors from introducing evidence that the defendant had applied for amnesty under IRCA in order to prove charges that the defendant had illegally received firearms while an illegal alien and had made false statements in connection with the acquisition of firearms. In so holding, the court first rejected the lower court's ruling that the name of a particular applicant for amnesty did not constitute "'information' subject to the confidentiality requirement." 913 F.2d at 1511. After establishing that an applicant's name is subject to the confidentiality provisions of subsection (c)(5), the court held that in enacting subsection (c)(5), "Congress sought only to prohibit disclosure of information to immigration authorities in the context of deportation proceedings." *Id.* The court went on to conclude:

> However, this concern is not implicated when the application is disclosed to a United States Attorney in a collateral criminal prosecution in which deportation is not at issue. We therefore conclude that . . . § 1255a(c)(4) & (5) only prohibit disclosures which aid in the deportation of illegal aliens; Congress did not intend to inhibit prosecutions for violations arising under the Criminal Code.

*Id.* at 1512.

Judge McKay dissented sharply from this conclusion. His dissent stated:

> I believe the court's opinion conflicts with the clear, unambiguous language of the statute and, in addition, creates an unwarranted exception which does not enhance the statute but rather flies in the face of its purposes. The confidentiality provision could hardly be more sweeping. . . . I simply cannot torture either ambiguity or an exception out of this provision.

> I have never pretended to be one who would not read expansively a statute or precedent for either an exception or extension providing it was warranted and consistent with the purposes of the statute. What has been done here not only is inconsistent with the purposes of the statute but also is flatly contradictory to its purposes. One can read nothing else in this statute except that it was intended to convey confidence that one coming forward under the statute could do so in complete confidence that information included in the application would be used only for the purposes for which it was filled out.

*Id.* at 1514 (McKay, J., dissenting).

As pointed out in the materials accompanying your request for this opinion, the Solicitor General conceded that *Hernandez* was wrongly decided. Brief for the United States in Opposition to Petition for Writ of Certiorari at 7-9, *Hernandez v. United States* (1990) (No. 90-6499). Referring to the confidentiality provision of 8 U.S.C. § 1255a(c)(5), the Solicitor General's brief stated, "we believe that this language prohibits the use of amnesty application information except for the purposes specifically identified in the statute." *Id.* at 9. Aside from asserting that the *Hernandez* court's interpretation of the Act's confidentiality provisions was "incorrect," the Brief stressed that "[i]n this case, the United States Attorney did not argue for the construction of the statute adopted by the court of appeals and, to our knowledge, the United States has not urged that construction in any context." *Id.* at 9 n.6.

We agree with the Solicitor General's contention that *Hernandez* was wrongly decided. We do not believe that the text of the statute permits an interpretation that its confidentiality restrictions are confined to use of the information against the applicant alien in deportation proceedings. The statute explicitly sets forth the particular exceptions that Congress contemplated and chose to permit. While Congress could easily have adopted a broader exception allowing use of amnesty information "for criminal law enforcement purposes," it chose instead to limit the exception to "enforcement of paragraph (6)." Although a fair construction of that exception allows introduction of (c)(5) information in a variety of prosecutions

reasonably related to false application filings, it does not permit such use in any and all prosecutions as long as they are outside the deportation context.

A final noteworthy opinion construing IRCA's confidentiality provision is *Zambrano v. INS, see supra* note 3, which was vacated by the Supreme Court on grounds other than those in issue here. Although the vacatur of *Zambrano* deprives it of precedental authority, its analysis raises a significant issue warranting consideration in this context.

In *Zambrano*, the court upheld the district court's injunction ordering the INS to provide the plaintiffs with a list of aliens whose amnesty applications were denied based on allegedly invalid INS regulations. The names were sought by illegal aliens in the context of a civil action asserting that these INS regulations were unduly restrictive.

In holding that the (c)(5) confidentiality provision did not bar "court ordered discovery" of the applicant names, the court relied on the Supreme Court's opinion in *St. Regis Paper Co. v. United States*, 368 U.S. 208 (1961). In *St. Regis*, the Court held that a confidentiality provision in the Census Act, containing language closely similar to that of (c)(5), applied only to Department of Commerce officials and did not "grant copies of the [covered Census materials] not in the hands of the Census Bureau an immunity from legal process." *Id.* at 218. Accordingly, the Court held that the Federal Trade Commission ("FTC") was entitled to obtain the St. Regis Company's *own* copies of the reports it had submitted to the Census Bureau pursuant to FTC reporting requirements. The Court further stated:

> Ours is the duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result. That this statute does not do. Congress did not prohibit the use of the reports *per se* but merely restricted their use while in the hands of those persons receiving them, *i.e.*, the government officials.

*Id.*

Neither *St. Regis* nor *Zambrano* contradicts our conclusion that subsection (c)(5) prohibits Justice Department use of amnesty application information in general criminal prosecutions while allowing such use (subject to the limitations of the INS regulation) in prosecuting crimes significantly related to amnesty application fraud. The *St. Regis* holding is confined to disclosure of information in the hands of third parties who are not subject to statutory disclosure restrictions that, as here, apply only to specific government officials. *Zambrano* — setting aside its vacated status — holds that an otherwise covered agency may disclose amnesty application information under the specific compulsion of judicial process. These opinions did not address the distinct issues raised when Justice Department officials, acting on

their own initiative, seek to introduce such information as evidence in certain criminal prosecutions related to false application fraud.

## 5. *The INS Regulation*

Under authority delegated by the Attorney General, *see* 8 U.S.C. § 1103, the INS has promulgated an interpretive regulation governing access to and use of (c)(5) material. 8 C.F.R. § 245a.2(t) (1993). This regulation is binding on other components of the Justice Department. It prohibits the use of (c)(5) information for any purpose "except: (i) to make a determination on the application; or, (ii) for the enforcement of the provisions encompassed in section 245A(c)(6) of the Act, except as provided in paragraph (t)(4) of this section." *Id.* § 245a.2(t)(3).

We interpret the INS regulation to mean that (c)(5) information may only be used in prosecutions of aliens under subsection (c)(6) itself, except in those cases described in paragraph (t)(4) of the regulation. That paragraph authorizes INS to refer cases of amnesty application falsification or fraud to the U.S. Attorney "for prosecution of the alien *or of any person who created or supplied a false writing or document for use in an application for adjustment of status under this part.*" 8 C.F.R. § 245a.2(t)(4) (emphasis added).

Although we believe that the statute itself would allow use of (c)(5) material in a broader range of situations than those authorized by the regulation, *see supra* Part II.3, the permissible uses set forth in the regulation provide authoritative guidance for Justice Department components unless revoked or amended. However, the government's use of (c)(5) information in violation of the INS regulation would not necessarily be subject to judicial suppression or exclusion. *United States v. Caceres*, 440 U.S. 741 (1979). As this Office has previously construed *Caceres*, in the absence of a statutory or constitutional violation, bad faith, or an element of justifiable reliance on an agency's adherence to a regulation by the complaining party, a court will not exclude evidence in a criminal case solely on the ground that the evidence was obtained or used in violation of agency regulations.[6]

It is not clear whether the regulation's provision for the use of (c)(5) material in third party cases would authorize use in the class of cases stressed in your request for opinion — i.e., acceptance of bribes by INS employees in return for approving false legalization applications.[7] As a general proposition, we believe that it would. If an INS employee makes any entries, marks of approval, or verifications on an

---

[6] *See* Memorandum for John M. Harmon, Assistant Attorney General, Office of Legal Counsel, from Cass R Sunstein, Attorney-Adviser, Office of Legal Counsel, *Re: Binding Effect of Department or Agency Guidelines* (Dec. 19, 1980).

[7] We think the regulation would generally allow use of (c)(5) information in the other class of cases highlighted in your request, i.e , prosecution of "middlemen" who submit false legalization applications on behalf of aliens Such middlemen would likely be involved in the creation or supplying of false documents used in the amnesty application, especially since participation in the submission of a false application itself should satisfy that criteria

amnesty application that he knows to be false or fraudulent, we believe he could be treated as supplying or creating a false writing or document within the meaning of paragraph (t)(4). We also note that the INS regulation does not limit the categories of crimes for which (c)(5) information can be used by federal prosecutors. We therefore believe that the INS regulation would allow (c)(5) information to be introduced in the prosecution of an INS employee for taking an amnesty-related bribe as long as the bribe-taker in some way participated in the creation, supply, or submission of falsified documents (including the amnesty application itself) used in connection with an amnesty application.

## Conclusion

Although 8 U.S.C. § 1255a(c)(5) generally prohibits the use of information from alien amnesty applications by federal prosecutors in criminal prosecutions other than prosecutions for filing false amnesty applications, we believe that the statute also permits the use of such information in prosecuting third parties for crimes that facilitate or are closely related to false amnesty application crimes.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*